Lynda MANLEY, Petitioner,

v.

OFFICE OF VOCATIONAL
REHABILITATION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1994.
Decided Dec. 29, 1994.

Stephen S. Pennington, for petitioner.

Frayda Kamber, Deputy Chief Counsel, for respondent.

Before SMITH and NEWMAN, JJ., KELTON, Senior Judge.

KELTON, Senior Judge.

Lynda Manley (Manley) appeals from the December 30, 1993 decision and order of the Office of Vocational Rehabilitation (OVR) approving a recommended decision of the Impartial Hearing Officer to close Manley's case because of her lack of cooperation in completing the application process to determine her eligibility for OVR vocational rehabilitation services.

The issue raised on appeal is whether, during that process, the OVR violated its statutory obligation to accommodate Manley's mental disability arising out of an alleged traumatic brain injury. We vacate the decision of OVR to close Manley's file and remand with directions that the OVR's eligibility review process make reasonable accommodation for Manley's alleged mental disability.

### Facts

The following facts are either undisputed or are summarized from the findings of the hearing officer, Catherine Z. Langan. (Adjudication of December 8, 1993 at 3–4.)

OVR is an agency within the Pennsylvania Department of Labor and Industry which provides vocational rehabilitation services to qualified applicants. The agency receives both state and federal funding and must comply with state and federal regulations in evaluating potential clients. The goal of OVR is to assist in the vocational rehabilitation of those handicapped or disabled individuals who meet the eligibility criteria established by the regulations.

In September, 1991, OVR informed Manley that it had agreed to reconsider her request for its services. Throughout the following seven months of the application process, OVR attempted to maintain contact with Manley via telephone calls and appointments. Manley failed to respond to messages left on her answering machine and was generally unavailable to complete the eligibility process. On February 26, 1992, John Walter, the Rehabilitation Specialist assigned to Manley's case, sent Manley a letter confirming OVR's attempts to reach her and informing her that if she failed to respond, her case would be closed. On April 14, 1992, OVR issued written notice to Manley confirming termination of its services and advising her of the appeal process. A week later, on April 21, 1992, Manley appealed the decision to close her case. OVR conducted an Informal Administrative Review and affirmed the decision to close Manley's case. Manley appealed that decision to the Department of Public Welfare which denied her appeal and upheld OVR's decision to close her case. Manley appealed to this Court and we vacate.[1]

### Discussion

■ Through her counsel, Manley argues that OVR violated Section 504 and Title I of The Rehabilitation Act of 1973 (Act), 29 U.S.C. § 794, by failing to make a reasonable accommodation for her disability, thereby denying her equal access to and meaningful participation in the OVR eligibility process.

Manley contends that she suffers from traumatic brain injury and that this disability has, at times, caused her to become uncooperative and belligerent with others. She argues that OVR was aware of her disability but failed to make accommodations in order for her to meaningfully participate in the eligibility process. Manley argues that reasonable accommodations could have included meeting with her at her home and extending the evaluation process. OVR, however, failed to evaluate what effect Manley's traumatic brain injury, if any, had on her ability to participate in the eligibility process and to make the appropriate adjustments. Therefore, Manley argues, OVR violated Section 504 and Title I of the Act. In part, Section 504 of the Act mandates the following:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). *See also, School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); 28 C.F.R. 35.130(a).[2]

Further, the regulations implementing Section 504 require reasonable adjustments in the nature of the benefit offered in order to ensure meaningful access. *Alexander v. Choate,* 469 U.S. 287, n. 21, 105 S.Ct. 712, n.

---

1. Our scope of review in appeals from administrative agencies is limited to a determination of whether the findings of fact are supported by substantial evidence, an error of law was committed, or constitutional rights have been violated. Administrative Agency Law, 2 Pa.C.S. § 704; *Harmony Volunteer Fire Company and Relief Association v. Pennsylvania Human Relations Commission,* 73 Pa.Commonwealth Ct. 596, 459 A.2d 439 (1983).

2. No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
   *28 C.F.R. 35.130(a).*

21, 83 L.Ed.2d 661 (1985). "A recipient [of federal financial assistance] shall make reasonable accommodation to the known physical *or mental* limitations of an otherwise qualified handicapped applicant...." 45 C.F.R. 84.12(a) (emphasis added).

Programs receiving federal financial assistance must "operate each program or activity ... so that the program or activity, when viewed in its entirety, is readily accessible to handicapped persons." 45 C.F.R. 84.22(a). "A recipient [of federal funds] may comply with the requirements of paragraph (a) ... through such means as ... home visits ... or any other methods that result in making its program or activity accessible to handicapped persons." 45 C.F.R. 84.22(b).

Section 504 of the Act defines "any otherwise qualified individual" as any person who (i) has a physical or mental impairment which substantially limits one or more of their major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. *Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); 29 U.S.C. § 706(7)(B). Although the Hearing Officer made no specific fact finding on the issue, Manley's counsel argues that she suffers from a traumatic brain injury which affects many aspects of her life, including her social skills. OVR does not dispute the fact that Manley is an "otherwise qualified individual" as defined in Section 504.

Manley contends that her traumatic brain injury caused her emotional instability which resulted in her "lack of cooperation." [3] Manley argues that the regulations cited above require OVR to take whatever steps are necessary to accommodate her disability so that she may effectively participate in the eligibility process. Mr. Walter, the Rehabilitation Specialist assigned to Manley's case, testified that he was aware of Manley's disability but nonetheless chose to close her file. (N.T. at 94.) He further testified that he considered her reason for not cooperating as immaterial. (N.T. at 95.) [4]

We disagree with Mr. Walter's opinion that Manley's reason for not cooperating is immaterial. It is certainly material if the reason for her failure to cooperate is the disability itself. OVR is required to accommodate persons whose disabilities may otherwise prevent them from taking advantage of OVR services. OVR would be required to make some reasonable accommodation by either providing transportation or by making a visit to the individual's home. A sight-impaired individual would not be necessarily be deemed uncooperative if he or she was unable to fill out paperwork or read notices sent in the mail. Again, in our judgment, OVR would be required to provide some

---

**3.** In her decision, the Hearing Officer concluded that the record was devoid of any competent evidence to support Manley's claim that her traumatic brain injury was the reason for her failure to cooperate. In so concluding, the Hearing Officer gave little weight to the testimony of Manley's treating psychologist, who testified to a nexus between Manley's brain injury and her uncooperative nature. (Adjudication of Department of Public Welfare, December 8, 1993 at 5, 7.)

**4.** Mr. Walter testified as follows:
A. It would be fair to say that I made no efforts to determine why she didn't cooperate with me, no. I did not make an effort to determine why she did not cooperate with me, the lack of cooperation was my issue. (N.T. at 86–87.)

....

Q. Certainly you were aware at the time she applied that [Manley] had a traumatic brain injury?
A. I was aware that she said that that was her injury. (N.T. at 93–94)

....

Q. Are you aware if problems with cooperation are a problem which is associated with individuals who have sustained traumatic brain injury?
A. There could be many manifestations of the traumatic brain injury, certainly motivation, cooperation and things like that would be involved, many things, could be involved.
Q. And you're saying that to the extent that [Manley's] traumatic brain injury caused those kinds of problems, no effort was made by you to determine that. No efforts was [sic] made by you to try to bring her into the system, to try to accommodate her, I think that's the question that I asked 20 times? I think your answer is really no, you did not, correct?
A. The answer is that, it is immaterial why she failed to cooperate.
Q. Even if it is related to her disability?
A. Yes.
Q. Would you say if it is, you failed to accommodate her?
A. No, I wouldn't. (N.T. at 94–95.)

alternative access procedure such as giving oral explanations or providing for notices in braille.

Manley's disability is not as easily detectable as the inability to walk or to see. It would, however, be equally debilitating in that it could preclude her access to OVR services if OVR refused to make some reasonable accommodation especially during the initial review process. Manley's disability manifested itself by making her appear uncooperative. OVR could have accommodated her disability by sending a rehabilitation counselor to her home or by extending the eligibility application process until she was able to cooperate. It would be ironic if an agency created to help people with disabilities would be able to refuse services to a person with a disability *because of* their disability. That is exactly what OVR did in this case.

■ OVR argues that Manley is not entitled to a reversal of the decision to close her case because she is not aggrieved by that decision. The agency contends that Manley is free to reapply for OVR eligibility at any time; that in effect, the issue is moot because all she has to do is assert her desire to reopen the case and her eligibility for OVR services will be assessed at that time.

Merely reapplying for OVR services, however, would not guarantee that OVR would make the necessary accommodations for her disability if Manley again failed to cooperate due to her disability. "Although generally a court will not decide moot cases, there is an exception where the conduct complained of is capable of repetition, yet will evade future review." *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 104 Pa.Commonwealth Ct. 21, 28, 521 A.2d 75, 78 (1987) (citing *Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union,* 484 Pa. 175, 398 A.2d 1001 (1979)). In *West Penn,* the utility company responded to a recently divorced plaintiff's application for electric service, by sending her a demand for a security deposit and a notice of termination because she lacked a

credit history of her own. After the plaintiff produced a one-year lease, the utility company withdrew its demand for a security deposit. This Court found that demanding a security deposit and threatening termination of service as a collection device was an internal operating procedure of the utility in violation of regulations. We concluded that,

> to permit [plaintiff's] appeal to be dismissed as moot, West Penn could continue its tactics of unjustifiably demanding security deposits and withdrawing its requests for such deposits only when challenged by ratepayers, many of whom may be unsophisticated and hence hesitant about asserting their rights.

*West Penn,* 104 Pa.Commonwealth Ct. at 28–29, 521 A.2d at 78.

As in *West Penn,* dismissing Manley's appeal for mootness would fail to provide her or anyone else in her position with protection against being treated in the same manner in the future. To ensure that Manley will not be treated in a like manner when she reapplies, we must vacate the decision to close her case and order OVR to continue the eligibility process at the point where Manley's case was closed, taking into account her inability to cooperate at times and making reasonable accommodations for her disability.[5]

For the reasons stated above, we vacate the decision of OVR and remand the case back to OVR with instructions to make the appropriate accommodations to Manley's disability in evaluating her eligibility for OVR services.

### ORDER

**AND NOW,** this 29th day of December, 1994, the order of the Office of Vocational Rehabilitation dated December 30, 1993 is hereby vacated and this matter is remanded to the Office of Vocational Rehabilitation with instructions to make the appropriate accommodations to Manley's disability, if

---

**5.** The report of the Informal Administrative Review, conducted on September 25, 1992, contains a strategy for accommodating Manley so

that she may take advantage of OVR's services. (Original Record, Item 15, Document 17A.)

any, in evaluating her eligibility for OVR services.

Jurisdiction relinquished.