## Carolyn A. BELL, Petitioner,

v.

## OFFICE OF VOCATIONAL REHABILITATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.

Decided Nov. 20, 1995.

Stephen S. Pennington, for petitioner.

Frayda Kamber, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Carolyn Bell (Bell) petitions for review of the January 31, 1995 order of the Office of Vocational Rehabilitation (OVR), closing Bell's case. We affirm.

Bell frames the issue on appeal as whether the OVR failed to make reasonable adjustments in its vocational evaluation program to accommodate Bell's environmental allergies, as required by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. More accurately, the issue before us is whether substantial evidence supports the OVR's

---

finding that Bell refused to participate in the vocational evaluation.[1]

## Background

The OVR adopted the following facts found by the hearing officer. Bell applied for vocational services in February 1993. Following a comprehensive medical examination, the OVR accepted Bell for services based on a diagnosis of sarcoidosis and osteoarthritis. Bell listed her disabilities as shortness of breath, fatigue, coughing, headaches, and intolerance to, among other items, chemicals, cleaners, and perfumes. Bell is under the care of an allergist and has a diagnosis of perennial and seasonal allergic rhinitis, conjunctivitis and rhinosinusitis, headaches, and history of allergies to citrus and chocolate. At her initial interview with the OVR, Bell indicated her vocational goal as owning her own business. She has had training as a licensed practical nurse and has an associate's degree from a community college.

The OVR determined that, due to the nature of her disabilities and limitations, Bell would have to undergo a vocational evaluation to measure her residual functional capacity and her residual vocational capacity. The vocational evaluation, lasting one to four weeks, was available at several sites, including the Vocational Rehabilitation Center (VRC) and Goodwill Industries. Bell refused to undergo the evaluation. By letter of May 13, 1993, Bell's OVR counselor, Craig W. Buchweitz, sent Bell a letter confirming the OVR's recommendation that Bell undergo a diagnostic work evaluation.

After a May 27, 1993 meeting with Alice Paylor, Bell's representative from the Client Assistance Program (CAP), the OVR requested additional information from Bell's allergist regarding her ability to participate in a work evaluation.[2] Bell's allergist, Dr. Green, replied, by letter of June 10, 1993, that Bell could tolerate a vocational assessment. Dr. Green suggested that Bell avoid any work exposure to dusty or smokey environments, mildew, and noxious chemicals. He also opined that Bell could not tolerate jobs requiring heavy exertion.

On July 13, 1993, Bell telephoned the OVR to inform Mr. Buchweitz that she would not go to the evaluation because she did not feel that it was necessary. By letter of July 30, 1993, the OVR informed Bell that it was closing her case due to her refusal to participate in the evaluation.

Bell appealed from the OVR's closure of her case. She argued before the hearing officer that a work evaluation was unnecessary given her skills and experience. She also claimed that her allergies prevented her from attending the suggested evaluation sites. Bell asserted that the VRC could not guarantee her a safe environment, free from toxins and chemicals. Specifically, Bell claimed that the VRC could not guarantee that its staff and clients would not smoke or use any scented products, including hair spray, deodorant, after shave or perfume, or that the VRC would not use any pesticides, cleaning solvents, or air fresheners during the time that Bell would be evaluated. She requested as relief, to have her case reopened so that she could obtain assistance in opening her own business, a personal care home, without undergoing a vocational evaluation.

The hearing officer determined that the OVR is under no duty to accept a client's choice of vocational goal without evaluation. The hearing officer questioned whether operating a personal care home is realistic for Bell as she would be exposed to, among other items, cleaning solvents and disinfectants. Noting that Bell attended a community college and a Department of Public Welfare training seminar, the hearing officer concluded that there would be a site where Bell could attend a vocational evaluation without undue risk to her health. The hearing offi-

---

1. Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, an error of law was committed, or whether constitutional rights have been violated. 2 Pa.C.S. § 704; *Stevenson v. Department of Labor and Industry,* 167 Pa. Cmwlth. 394, 648 A.2d 344 (1994).

2. The record shows that Ms. Paylor suggested to the OVR that Bell could not tolerate an evaluation due to her allergies. (Original Record, Hearing of May 2, 1994, Exhibit C–9.)

cer concluded that the OVR correctly closed her case due to her refusal to participate in the evaluation. That order became final as of January 31, 1995.

On appeal to this Court, Bell no longer argues that the vocational evaluation is unnecessary. Relying on *Manley v. Office of Vocational Rehabilitation*, 654 A.2d 25 (Pa. Cmwlth.1994), she contends that the OVR violated the Rehabilitation Act in failing to make such reasonable adjustments necessary to provide her meaningful access to the evaluation program.[3] She requests that the OVR reopen her case and assist her in finding an adequate evaluation site.

The OVR argues that it properly required a vocational evaluation to determine Bell's employability given her disabilities and outdated skills. The OVR contends that although her allergist cleared her for an evaluation, Bell's CAP representative set up impossible and unwarranted restrictions. The OVR, thus, distinguishes *Manley* in which the applicant's mental condition prevented her from cooperating with the OVR. Additionally, the OVR contends that it has no duty to assist Bell in establishing her own business which it considered an unrealistic goal.

### Discussion

The purpose of the Rehabilitation Act of 1973 (the Act), 29 U.S.C. §§ 701–797b, is to assist states in providing vocational rehabilitation services to handicapped individuals. 29 U.S.C. §§ 701, 720; *Stevenson v. Department of Labor and Industry*, 167 Pa.Cmwlth. 394, 648 A.2d 344 (1994). Agencies receiving federal assistance under the Act must comply with the Act and its governing regulations. *Stevenson.*[4]

Under the federal regulations, a state implementing the Act "must assure that eligibility is based only upon: (1) [t]he presence of a physical or mental disability which for the individual constitutes or results in a substantial handicap to employment; and 2) [a] reasonable expectation that vocational rehabilitation services may benefit the individual in terms of employability." 34 C.F.R. § 361.31(b).[5] The state must assure that there is a preliminary diagnostic study to determine an individual's eligibility. 34 C.F.R. § 361.32(a). Where necessary, the state may require an extended evaluation to determine an individual's rehabilitation potential. 34 C.F.R. §§ 361.32(a)(2), 361.34(a).

The Act also provides that "[i]ndividuals with disabilities must be active participants in their own rehabilitation programs, including making meaningful and informed choices about the selection of their vocational goals and objectives and the vocational rehabilitation services they receive." 29 U.S.C. § 720(a)(3). Thus, the regulations provide that

> [t]he [s]tate ... may close a case without any determination of eligibility when an applicant is unavailable during an extended period of time to complete an evaluation of vocational rehabilitation potential and the [s]tate unit has made repeated effort to contact the individual and to encourage the individual's participation.

34 C.F.R. § 361.35.

In the case at bar, our review of the record reveals that substantial evidence supports the OVR's finding that an appropriate evaluation site was available but that Bell refused to cooperate with the OVR.

The OVR acknowledged on Bell's Certificate of Eligibility, dated June 11, 1993, that Bell's substantial handicaps to employment include sarcoidosis, osteoarthritis, as well as allergies to smoke, pollen, perfume, sprays,

---

**3.** Section 504 of the Rehabilitation Act provides, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

**4.** The Vocational Rehabilitation Act, Act of December 20, 1988, P.L. 1306, *as amended,* 43 P.S. §§ 682.1–682.18, was enacted in the Common-

wealth to implement the federal act. The OVR is established thereunder to provide vocational rehabilitation services to individuals with disabilities determined to be eligible. Section 7, 43 P.S. § 682.7.

**5.** The Act defines an individual with a disability as any individual who 1) has a physical or mental impairment that constitutes a substantial impediment to employment and 2) can benefit from vocational rehabilitative services in terms of employability. 29 U.S.C. § 706(8).

cat and dog dander, and house dust. (Original Record, Hearing of May 2, 1994, Exhibit C–5.) In response to Mr. Buchweitz's request for information concerning Bell's condition, Bell's allergist, Dr. Green, responded by letter of June 9, 1993 as follows:

> In my opinion Mrs. Bell would be able to be employed in a clerical position, and that her allergies should not prevent her from doing that type of work. I also believe that she could tolerate an assessment of her vocational skills at a vocational rehabilitation facility. I would suggest that she avoid any exposures to dusty or smokey environments, mildew, and noxious chemicals. I do not believe that she would tolerate jobs requiring heavy exertion.

(Original Record, Hearing of May 2, 1994, Exhibit C–6.)

By letter of June 10, 1993, Mr. Buchweitz informed Bell that Dr. Green had given her medical clearance to participate in the vocational evaluation. (Original Record, Hearing of May 2, 1994, Exhibit C–9.) In that letter, Mr. Buchweitz requested Bell to contact him by July 30, 1993, if interested. (Original Record, Hearing of May 2, 1994, Exhibit C–9.) Mr. Buchweitz's note from a telephone call from Bell, on July 13, 1993, states that "She will not go for the work eval. as she does not feel it is necessary." (Original Record, Hearing of May 2, 1994, Exhibit C–10; N.T. at 21.) By letter of July 30, 1993, the OVR notified Bell that it had closed her case due to her refusal to participate in the work evaluation. (Original Record, Hearing of May 2, 1994, Exhibit C–11.)

When questioned at the hearing whether the environmental condition at the building was the only reason that Bell did not want to go to the evaluation, she responded, "Okay, environment had a lot to do with it but then I know what I want to do. I want to start may own business." (Original Record, Hearing of May 2, 1994, N.T. at 54.) The record also shows that as recently as February 1994, Bell had attended workshops and seminars. (Original Record, Hearing of May 2, 1994, N.T. at 43, 48, 52.) Additionally, she has a 1992–1994 practical nursing license. (Original Record, Hearing of May 2, 1994, Exhibit A–3B.)

Although Bell argued that the VRC could not guarantee her a safe environment, her inquiry to the VRC, which took place *after* the OVR had closed her case, exaggerated her condition and contained unwarranted restrictions. In her letter of August 30, 1993, Ms. Paylor, Bell's CAP representative, wrote:

> We need to know if VRC can guarantee that staff and VRC clients will not smoke or use any scented products during the time that the client will be evaluated. Scented products include hairspray, deodorant, cologne, perfume or aftershave lotion. We are also asking VRC to commit to not using any pesticide spraying, cleaning solvents or air fresheners in the building.
>
> We will also need to know what type of machinery is used in the building, as machines produce fumes that will cause the client to have a reaction.

(Original Record, Hearing of May 2, 1994, Exhibit A–6.) Ms. Paylor enclosed a list of items that Bell must avoid at all times to avoid "excruciating pain and discomfort." (Original Record, Hearing of May 2, 1994, Exhibit A–6.) That list included, in addition to the items specified by Ms. Paylor in her letter, automobile traffic, moth balls, and over-ripe foods. Ms. Paylor wrote an identical letter to Goodwill on August 30, 1993. (Original Record, Hearing of May 2, 1994, Exhibit A–8.)

The VRC responded, by letter of September 16, 1993, that "[g]iven the extreme restrictions that your letter indicates it would not be possible for VRC to guarantee such an environment" for Bell. (Original Record, Hearing of May 2, 1994, Exhibit A–7.) The VRC indicated, however, a willingness to discuss alternatives such as a home-bound evaluation. There is no indication in the record that Bell followed up on the VRC's suggestion. Goodwill responded that it could not guarantee that Bell would be isolated from substances such as deodorant, listed in Ms. Paylor's letter. (Original Record, Hearing of May 2, 1994, Exhibit A–4.)

The record, therefore, indicates that it was not Bell's disability that caused her unwillingness to participate in the work evaluation. This case, therefore, is distinguishable from *Manley.* In *Manley,* the applicant alleged that her mental disability itself prevented her from cooperating with the OVR. There-

fore, this Court determined that, under Section 504 of the Rehabilitation Act, the OVR was required to accommodate her disability, as appropriate, in evaluating her eligibility for services.

We conclude, that because substantial evidence supports the OVR's finding that Bell, for reasons unrelated to her disability, refused to cooperate in a work evaluation, the OVR properly closed her case. Accordingly, we affirm the order of the OVR on that basis. Therefore, we do not address the additional issues raised by the OVR.

### ORDER

**AND NOW,** this 20th day of November, 1995, the order of the Office of Vocational Rehabilitation dated January 31, 1995 is hereby affirmed.