Janis BROOKS, Petitioner,

v.

OFFICE OF VOCATIONAL
REHABILITATION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.

Decided Aug. 21, 1996.

Reconsideration Denied Oct. 17, 1996.

Gerald J. Williams, for Petitioner.

Frayda Kamber, Deputy Chief Counsel, for Respondent.

Before DOYLE and FLAHERTY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Janis Brooks (Brooks) petitions for review of a final determination of the Executive Director of the Office of Vocational Rehabilitation (OVR) which denied Brooks' request for further vocational rehabilitation services. We affirm.

## Issues

The issues presented on appeal as framed by Brooks are whether OVR violated Section 504 of the Rehabilitation Act of 1973 (Federal Act), 29 U.S.C. § 794(a), by relying on an internal policy of not providing reimbursement for chiropractic treatment and travel expenses related thereto in denying her request for further rehabilitative services; and whether OVR violated Brooks' right to due process by failing to hold the impartial hearing within 45 days of receiving her request to the Director, as set forth in the Client Appeal Process Manual, and by failing to notify her of the issues to be determined at the hearing.

## Background

The following facts are either not disputed or summarized from the findings of the Impartial Hearing Officer (hearing officer), John A. Parse. (Original Record, Item No. 18, Adjudication of June 1, 1995, pp. 2–6.) Brooks suffers from Multiple Chemical Sensitivities or MCS, a little known disease, which causes numerous physical reactions to chemicals and products in public places. Although Brooks had been employed by Indiana University of Pennsylvania, she was forced to quit as a result of her disability. Brooks initially sought and secured Social Security Disability benefits and later, OVR services in order to facilitate her efforts to become productive in the work force again. To that end, Brooks, who was pursuing her doctoral degree at the University of Pittsburgh, requested financial assistance from OVR, which in turn provided full payment for: 1) full dental filling replacements; 2) a sauna for her home to allow her to "detoxify"; 3) a computer, modem, and software packages; and 4) typing services.

Initially, Medicaid picked up the bill for Brooks' chiropractic treatments with Dr. Charles Simkovich and she requested only reimbursement of her travel expenses to Dr. Simkovich from OVR; however, when Brooks reached her limit on Medicaid reimbursement, she then turned to OVR and requested that OVR reimburse her for the chiropractic treatments as well. Although her vocational counselor David A. Hayden initially told her that OVR had an internal policy of refusing to reimburse claimants for chiropractic services, he then told Brooks that he would look into her case and contact her doctors for information on the reasonableness and necessity of the treatment.

On February 3, 1993, Thomas C. Krapp, Assistant Administrator with OVR, wrote to Brooks to inform her, among other things, that:

> Your request to pay for your transportation to your chiropractor for routine visits will be considered once we have obtained a report from your chiropractor regarding details of the treatment you are receiving. As indicated, Mr. Hayden had made several attempts to talk with your doctor to indicate what we need in the report and this has included written correspondence. Mr. Hayden will be sending Dr. Simkovich a letter explaining our needs and will also provide you with a copy of this letter.

(Original Record, Item No. 13, Hearing of July 25, 1994, Exhibit A–4, p. 2.)

Mr. Hayden wrote to Dr. Simkovich on three occasions seeking information as to how the application of chiropractic services impacted upon Brooks' MCS and what treatment was most effective in alleviating her symptoms. (Original Record, Item No. 13, Hearing of July 25, 1994, Exhibits A–1, A–7, and A–10.) Mr. Hayden stressed that he could not "make any determination regarding OVR financial involvement until the medical information is received." (*Id.,* Exhibit A–7.) Brooks was sent a copy of each of Mr. Hayden's written requests to Dr. Simkovich. Mr. Hayden also wrote to Brooks' former treating physician, Dr. Roy E. Kerry, requesting Dr. Kerry's written medical opinion regarding the effectiveness of chiropractic treatments for Brooks' MCS. (*Id.,* Exhibit A–9.)

Dr. Simkovich replied briefly in writing that "the work that [he] provide[s] for Ms. Brooks ... is very complicated and difficult to understand" and "is easier understood with dialogue and demonstration than it would be on paper." (Original Record, Item No. 13, Hearing of July 25, 1994, Exhibit A–8.) Dr. Kerry also responded in writing that while "[w]e have noted improvement in many MCS patients with various chiropractic care ... I am not in a position to give a medical opinion regarding his [Dr. Simkovich's] specific treatment modality without more specific information." (Original Record, Item No. 13, Hearing of July 25, 1994, Exhibit C–4.)

On May 27, 1993, Brooks wrote to the director of OVR's programming to request a fair hearing on several issues, including the delay in OVR's response to her request to fund her chiropractic treatments and associated travel expenses.[1] After several discussions and correspondence between Brooks, her Client Assistant Program (CAP) representative, Alice O. Paylor, OVR, and the hearing officer, regarding a suitable location for the hearing in the Pittsburgh area that Brooks could comfortably attend due to her disability, a hearing was finally held on July 25, 1994, at the Carnegie Library in Oakland.[2]

The hearing officer determined that Brooks failed to provide any competent medical evidence that chiropractic services were necessary, customary, or even reasonable to reduce MCS.[3] Accordingly, he denied her request for further rehabilitative services, which became a final determination by the Executive Director on June 1, 1995.

On appeal to this Court,[4] Brooks argues that the sole reason OVR denied her request to pay for her chiropractic treatments and related travel expenses is because of OVR's blanket policy of not paying for this type of treatment. This, she argues, is a per se violation of the Federal Act preventing her from completing a successful rehabilitation program. Brooks also argues that because she was denied services based on this "antiquated" policy, she was effectively precluded from proving at the hearing that chiropractic is effective in treating her MCS. Finally, Brooks argues that her due process rights were violated because the impartial hearing was not held within the 45 days as required under OVR's own regulations and that she was not notified that the sole issue to be determined at the hearing was whether or not her chiropractic treatments were necessary, customary or reasonable in effectively treating her MCS and therefore she was not prepared to prove this at the hearing.

OVR argues that Brooks had the burden of establishing that the chiropractic services were necessary, customary, or reasonable in alleviating her MCS. 1 Pa.Code § 35.125(c).[5]

---

1. The relevant text of Brooks' letter is as follows:

   I am requesting to proceed to a Fair Hearing based upon timeliness of service. I have been deemed eligible for services and my IWRP has been approved. Medical services needed to assist in my physical restoration have not been adequately addressed[.]

   In 1991, I requested that OVR provide travel assistance to my chiropractic appointments. A decision still has not been made. Moreover, almost a year ago, I received partial dental work. All of the work could have been authorized at the same time, as requested. Due to the extended delay in paying the dentist, there is a reluctance on the dentist [sic] part to finish the needed work, without partial or full payment.

   (Original Record, Item No. 1.)

2. According to the Client Appeal Process Manual, the hearing officer "may grant reasonable extensions of time for good cause shown at the request of OVR or the client (or the client's representative) or at the request of both parties."

Appellant's Brief, Appendix, Client Appeal Process Manual at p. 11.

3. The hearing officer determined that the issues with respect to Brooks' dental work were moot since the dental work had all been completed and paid for by the time the impartial hearing was held. (Original Record, Item No. 13, Hearing of July 25, 1994, p. 148.)

4. Our scope of review in appeals from administrative agencies is limited to a determination of whether the findings of fact are supported by substantial evidence, an error of law was committed, or constitutional rights have been violated. Administrative Agency Law, 2 Pa.C.S. § 704; *Harmony Volunteer Fire Company and Relief Association v. Pennsylvania Human Relations Commission*, 73 Pa.Cmwlth. 596, 459 A.2d 439 (1983).

5. This section states that "[i]n proceedings where the evidence is peculiarly within the knowledge

OVR asserts that it made its determination not to fund these services to Brooks because she failed to carry her burden, and *not* because of its internal policy of not paying for chiropractic services. Secondly, OVR argues that Brooks waived her due process issues by not raising them by objections to the hearing officer's recommendation; alternatively, OVR argues that Brooks had full notice of all the issues to be determined at the hearing and was on notice that OVR was questioning the necessity and value of the chiropractic services, and that she herself contributed to the delay in holding the hearing until a suitable site could be found for the hearing.

### Discussion

As this Court noted in *Stevenson v. Commonwealth, Department of Labor and Industry,* 167 Pa.Cmwlth. 394, 648 A.2d 344, 347 (1994), the Federal Act "authorizes federal grants to assist states in operating vocational rehabilitation programs to provide needed services to handicapped individuals." The purpose of the Federal Act is:

(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society . . .

(2) to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with severe disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living.

29 U.S.C. § 701(b)(1) and (2).

The Commonwealth subsequently enacted the Vocational Rehabilitation Act (Rehabilitation Act),[6] in order to implement the Federal Act. Similarly, the purpose of the Rehabilitation Act as stated in Section 2 is:

to develop and implement comprehensive and coordinated programs of vocational re-

or control of another party or participant, the order of presentation set forth in subsections (a) and (b) may be varied by the presiding officer."

**6.** *Act of December 20, 1988, P.L. 1306, 43 P.S. §§ 682.1–682.18.*

habilitation to meet the current and future needs of individuals with disabilities in order to maximize their employability, independence and integration into the workplace and the community.

43 P.S. § 682.2.

The definition of vocational rehabilitation services in Section 3 of the Rehabilitation Act is in part, as follows:

Any goods or services, as defined by Federal law, which are provided directly or indirectly through public or private instrumentalities and which are found to be necessary for an individual with a disability to:

(1) overcome employment handicaps and engage in a gainful occupation or profession;

43 P.S. § 682.3.

The types of services available through OVR are listed in Regulation 361.42(a), and include "[p]hysical and mental restoration services, necessary to correct or substantially modify a physical or mental condition which is stable or slowly progressive . . ." 34 C.F.R. § 361.42(a)(3), which Brooks contends encompasses chiropractic treatments. However, it is entirely within OVR's discretion to determine whether or not the requested assistance or service will reasonably benefit Brooks' employability. As the hearing officer stated at the hearing, the determinative issue was whether "chiropractic services [are a] necessary, customary, or reasonable means of treating multiple chemical sensitivities and enhancing appellant's [Brooks'] goals." (Original Record, Item No. 13, Hearing of July 25, 1994, p. 95.)

Brooks argues however, that because MCS is a disease about which very little is known, OVR should have accepted chiropractic services as a less-proven method of treating her disability and by failing to do so, OVR failed to make reasonable adjustments in the nature of the benefit offered to her in violation of Section 504[7] of the Federal Act

**7.** Section 504 of the Federal Act provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

and failed to make reasonable accommodation of her known disability in violation of this Court's decision in *Manley v. Office of Vocational Rehabilitation*, 654 A.2d 25 (Pa. Cmwlth.1994). We disagree.

In *Manley*, OVR had issued a written notice to Manley closing her case due to her lack of cooperation in *completing* the eligibility process. Manley asserted that she suffered from a traumatic brain injury which caused her emotional instability and resulted in her lack of cooperation in fulfilling OVR's eligibility requirements. On appeal, she argued that OVR violated Section 504 of the Federal Act by failing to make a reasonable accommodation for her disability, thereby denying her access to and meaningful participation in the eligibility process.

This Court concluded that if Manley's disability was the cause for her lack of cooperation, then certainly, OVR should have made reasonable accommodations to ensure that Manley was able to complete the eligibility process, either "by sending a rehabilitation counselor to her home or by extending the eligibility application process until she was able to cooperate." 654 A.2d at 28. Conversely, in the matter before us, Brooks has not been denied access to or meaningful participation in the eligibility process. Having already been the recipient of a number of vocational rehabilitation benefits provided by OVR and noted previously in this opinion, Brooks is now taking issue with the fact that her request for vocational rehabilitation services in the form of chiropractic treatments have been denied, not due to her disability, but due to her failure to establish that chiropractic treatments are necessary, customary or reasonable in alleviating MCS.

In that regard, chiropractic, as defined in the Chiropractic Practice Act,[8] is defined as:

A branch of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the neuro-musculo-skeletal system and the role of these relationships in the restoration and maintenance of health. The term shall include systems of locating misaligned or displaced vertebrae of the human spine and other articulations; the examination preparatory to the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health; and the use of board-approved scientific instruments of analysis, including X-ray. The term shall also include diagnosis, provided that such diagnosis is necessary to determine the nature and appropriateness of chiropractic treatment; the use of adjunctive procedures in treating misaligned or dislocated vertebrae or articulations and related conditions of the nervous system, provided that, after January 1, 1988, the licensee must be certified in accordance with this act to use adjunctive procedures; and nutritional counseling, provided that nothing herein shall be construed to require licensure as a chiropractor in order to engage in nutritional counseling. The term shall not include the practice of obstetrics or gynecology, the reduction of fractures or major dislocations, or the use of drugs or surgery.

63 P.S. § 625.102.

It is not clear from reading this definition of chiropractic whether or not it would be an effective mode of treatment as part of Brooks' rehabilitation program. We have no evidence of record other than Brooks' unsubstantiated and unsupported assertions that this treatment is necessary, customary or reasonable in alleviating MCS and furthering her vocational goals. The letter from Dr. Simkovich, Brooks' chiropractor, merely states that the treatment he provided to Brooks was "an advanced form of kinesiology called neural organization" which "deals with the specific neurological supply to different organs, glands, etc. in the body." (Original Record, Item No. 13, Hearing of July 25, 1994, Exhibit A–8.) This is insufficient to prove that the chiropractic services could be of benefit to Brooks. In addition, her former treating physician, Dr. Kerry, declined to

---

Federal financial assistance." 29 U.S.C. § 794(a).

8. Act of December 16, 1986, P.L. 1646, *as amended*, 63 P.S. §§ 625.101—625.1106.

offer his medical opinion on the efficacy of chiropractic treatment for MCS *without* further information from Dr. Simkovich.

In our opinion, given the limited amount of medical and or other literature available on the disability of MCS in general, we believe that in order to determine whether or not any form of chiropractic treatment as defined under the statute [9] would be of benefit to someone in Brooks' condition, an expert opinion is required.

While state agencies such as OVR are subject to the Federal Act and its regulations, the scope of requested services is not unlimited, but must be *needed to help effectuate the client's vocational goals.* As this Court stated in *Martin v. Commonwealth, Department of Labor and Industry*, 75 Pa. Cmwlth. 403, 461 A.2d 1351, 1352 (1983), referring to the Federal Act, "[t]he Act requires [the client] to establish that the assistance requested can reasonably be expected to benefit [the client's] 'employability'." The regulations, federal or state, do not say that every request made by a client accepted by OVR must be fulfilled. Certainly that was not the case in *Stevenson v. Commonwealth, Department of Labor and Industry*, 167 Pa. Cmwlth. 394, 648 A.2d 344 (1994), where this Court affirmed OVR's denial of vocational services requested by Ms. Stevenson, specifically, her request for financial assistance in pursuing a master's degree in accounting.[10] In affirming OVR, we held that:

> It would be unreasonable and impractical to require that the 'highest level of education achievable' be granted in every case of providing an individual with rehabilitation services. Rather, the goal of attaining suitable employment is a highly individualized determination which is to be made on a case-by-case basis. The scope of services to be provided, and the level of edu-

cation pursued, appears to be related to the degree of vocational disability, and not the attainment of the highest level of education achievable.

648 A.2d at 347 (footnote omitted).

To summarize, because Brooks has failed to demonstrate that the chiropractic services could reasonably be expected to reduce her MCS or to overcome her vocational handicaps and enable her to achieve her goal of suitable employment, we affirm the determination of OVR that Brooks is not entitled to further vocational rehabilitation services.

█ With respect to Brooks due process issues, we conclude that the delay in conducting the impartial hearing was not a violation of Brooks' right to due process. This delay was negotiated by and between all the parties, at Brooks' insistence on holding the hearing at a location that would not prove "toxic" to her due to her disability.[11] Furthermore, the issues that Brooks raised in her letter requesting an impartial hearing were addressed by the hearing officer, who determined that, in light of the fact that the dental issues had been taken care of at the time of the hearing, the sole issue that remained was the issue of chiropractic treatments and associated travel expenses.

For all of the foregoing reasons, we conclude that the determination of the OVR that Brooks is not entitled to any further vocational rehabilitation services is affirmed.

### ORDER

AND NOW, this 21st day of August, 1996, the order of the Office of Vocation Rehabilitation dated June 1, 1995 is hereby affirmed.

---

9. 63 P.S. § 625.102.

10. Ms. Stevenson first applied to OVR to secure financial assistance in obtaining her associate's degree in accounting, which OVR provided. She *subsequently received* financial assistance from OVR to obtain her bachelor's degree in accounting as well. 167 Pa.Cmwlth. 394, 648 A.2d 344, 345.

11. *See* Original Record, Item Nos. 2–12. For example, in her July 19, 1994 letter to Ms. Paylor of CAP, Brooks requested "[r]easonable [a]ccom-

modations" for her MCS. Brooks requested that "participants please not wear scented products which include: cologne, perfume, aftershave, hairspray, deodorant [sic], clothes scented with fabric softener, recently dry cleaned clothes, clothes washed with scented soap, and clothes free of cigarette or cigar smoke. Since the meeting is in the morning it is crucial that individuals please not use anti bacterial soaps such as Dial, Safeguard, Lifeboy, Irish Spring, etc." (Original Record, Item No. 12.)