**John W. PETSINGER, Petitioner**

v.

**OFFICE OF VOCATIONAL REHABILITATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 13, 1996.

Decided Dec. 20, 1996.

Frederick N. Dorfman, King of Prussia, for Petitioner.

Richard C. Lengler, Assistant Counsel, Harrisburg, for Respondent.

PER CURIAM.

John W. Petsinger petitions for review of a February 5, 1996 final decision of the Executive Director of the Office of Vocational Rehabilitation (OVR) denying his appeal of the alleged denial of vocational rehabilitation services by OVR. We affirm.

OVR was established by the Vocational Rehabilitation Act (the Act), Act of December 20, 1988, P.L. 1306, *as amended,* 43 P.S. §§ 682.1–682.18, as the Pennsylvania agency designated to administer the state plan for vocational rehabilitation services under federal law, 29 U.S.C. §§ 720–751. OVR is charged with providing vocational rehabilitation services, as defined by federal law,[1] to individuals with disabilities determined to be eligible therefor. Section 7(a) of the Act, 43 P.S. § 682.7(a).

A requirement for the provision of these services is the development of an individualized written rehabilitation program (IWRP) for each client, developed jointly by the client and his OVR vocational rehabilitation counselor, setting forth the terms and conditions, as well as the rights and remedies, under which goods and services will be provided. 29 U.S.C. § 722(a). The federal statute and the Act both give a client the right to appeal a determination of a rehabilitation counselor as to the services to be provided, and to receive a fair hearing. *See* 29 U.S.C. § 722(d), and Section 13 of the Act, 43 P.S. § 682.13.

In the case at bar, Petsinger was employed by OVR as a vocational rehabilitation counselor until 1988, when he was terminated for alleged terroristic threats. He subsequently became disabled, allegedly as a result of the circumstances surrounding his discharge, and on July 20, 1989, he applied with OVR for vocational rehabilitation services. He was found eligible for these services on December 3, 1990, based upon functional limitations which included "Generalized Anxiety Disorder" with an "Affective Component–Depressed." Petsinger was also later diagnosed with a secondary disability.

Petsinger and his counselor began to discuss the development of his IWRP. As part of this process, Petsinger identified as a vocational goal his desire to return to employment as a vocational counselor for OVR, as well as his interest in working as a security guard, baker, electrician, lawyer, in computer services and in resumes services. The IWRP was not completed, and services were not provided.

On July 18, 1994, Petsinger requested a fair hearing on the denial of services, which was held on April 26, 1995, before an impartial hearing examiner. As found by the hearing examiner, OVR agreed during the hearing that Petsinger was eligible for services and that it would continue to work with him to identify a vocational objective and develop

---

1. The federal statute defines "vocational rehabilitation services" as "any goods or services necessary to render a handicapped individual employable," and specifically lists the types of services included. 29 U.S.C. § 723.

an IWRP. An IWRP was finalized on May 16, 1995, identifying the job of vocational counselor as Petsinger's vocational goal and the counseling and placement services to be provided by OVR. Petsinger also requested on the IWRP other services including eye care, counselling for debilitating nightmares, auditory evaluation and a new computer, with peripherals. During a second day of hearings, on October 26, 1995, Petsinger requested several evaluations, counselling and placement services, which OVR agreed to provide. He also requested services which OVR did not agree to provide, including income maintenance, private rehabilitation counseling services (to be contracted for by OVR), a computer and printer, a high speed fax and computer training.

On January 16, 1996, the hearing examiner issued an Adjudication recommending that Petsinger's appeal be denied. In the Adjudication, the hearing examiner ordered OVR to provide the services it had agreed to provide, and denied Petsinger's request for private rehabilitation counselling, income maintenance, restoration services, computer, printer and fax. The Executive Director of OVR chose not to review the hearing examiner's decision, and on February 5, 1996, the decision became final. Petsinger's appeal to this Court ensued.

■ Petsinger argues on appeal that his due process rights were violated by the hearing examiner, that his right to a fair hearing was denied because the Executive Director did not recuse himself from acting on the hearing examiner's recommended decision, and that the hearing examiner erred as a matter of law in placing the burden of proof on him. Our scope of review is limited to a determination of whether the findings of fact are supported by substantial evidence, an error of law was committed, or constitutional rights have been violated. *Manley v. Office of Vocational Rehabilitation,* 654 A.2d 25 (Pa.Cmwlth.1994).

■ Petsinger's initial argument, that his due process rights were violated, focuses upon two perceived errors in the hearing examiner's conduct of the proceedings and her written decision. First, he claims that at the second hearing the hearing examiner

"ruled" that he was eligible for services by OVR and that the services had not been provided, but then ruled in her written decision that there was no denial of services. Petsinger argues that he did not have a chance to be heard on the issue of denial of services because the hearing examiner said it was not at issue. Based upon our review of the transcript and the hearing examiner's decision, we believe that this argument is without merit.

At the start of the second hearing, in an attempt to narrow the focus of the proceedings, the hearing examiner asked Petsinger's attorney to specify, on the record, exactly what services he wanted OVR to provide. The hearing examiner stated that the issue was not the denial of services in the past, but what services Petsinger was presently requesting and whether he is eligible for those services. (Notes of Testimony from 10/26/95 (N.T.) at 9.) She specially stated, "I am not addressing, in any decision that I make, reasons for or what happened in the past with regard to—with regard to services or nonservices." (N.T. at 11.) She went on to note, and there is no dispute over the fact, that Petsinger had not yet received any services although he had been found eligible. (N.T. at 11–12.)

In her Adjudication, the hearing examiner did address the services that Petsinger requested in his IWRP and on the record at the second hearing, and decided whether he was eligible for those services. Contrary to Petsinger's claim, the hearing examiner did not state in the decision that there had been no denial of services, except with regard to the evaluation of his secondary disability. Concerning the secondary disability, even though the hearing examiner found that there was no evidence in the record establishing that the secondary disability has any impact on his rehabilitation potential, she ordered OVR to provide services relating to that disability as follows:

1. Evaluation of the client's secondary disability including physical and psychological exams necessary to determine rehabilitation potential.

. . . .

3. Counselor will become familiar with the likely progression of the client's secondary disability and its impact on his vocational rehabilitation and possible future employment; and will incorporate such information into his counseling.

4. Counselor will investigate pharmaceuticals that client is now taking, those he is likely to be taking in the foreseeable future, and their effects on his functional limitations.

5. Counselor will consider client's primary psychological/emotional disability as well as psychological issues resulting from his secondary disability when making counseling decisions.

Accordingly, even if Petsinger had presented evidence on the past denial of services relating to his secondary disability, the hearing examiner ordered the prospective relief he requested for that disability. The hearing examiner also ordered OVR to provide other services, related to his primary disability or both, services that OVR had already agreed to provide on the record at the second hearing. She then considered the services Petsinger requested that OVR did not agree to provide, and concluded that he was not entitled to them.

■ Petsinger also claims that the hearing examiner erred in listing the services OVR agreed to provide in the Discussion portion of the Adjudication, rather than in an order. In the Discussion, the hearing examiner wrote, "*it is ordered,* and OVR has agreed to provide the following services," and then listed nine specific items, including the above-quoted services relating to Petsinger's secondary disability. Not only did OVR agree to provide the services, but the hearing examiner explicitly *ordered* that it do so. This is certainly as enforceable as if it were included in a separate part of the Adjudication as an "order."

■ Petsinger's second argument is that the Executive Director should have recused himself and not reviewed the hearing examiner's decision. He claims that because the Executive Director filed a criminal complaint against him, when he was an OVR employee, participated in opposing a workmen's compensation claim filed by Petsinger, and had refused to reinstate him to his job with OVR, he should have recused himself. Under federal regulations, the Executive Director is given the option of reviewing an impartial hearing examiner's adjudication or not. 34 C.F.R. § 361.48(c)(2)(iv). If he chooses to review a decision, the parties are given time to submit additional evidence, and then the Executive Director issues a final, written decision. 34 C.F.R. § 361.48(c)(2)(vii)-(viii).

In this case, the Executive Director advised Petsinger, in a letter dated February 5, 1996, that in accordance with the federal regulations, the decision of the hearing examiner became final as of that date. Clearly, the only action taken by the Executive Director was to decide *not* to review the hearing examiner's Adjudication. This is not a situation where the Executive Director undertook a review of a hearing examiner's decision, considered new evidence, and issued an adverse ruling. The Executive Director actually took a neutral role in choosing not to review the decision.

Moreover, under federal law, the Executive Director "cannot delegate authority to make a final decision to any other officer or employee." 34 C.F.R. § 361.48(c)(2)(ix). The hearing examiner's Adjudication had to be acted upon, and there was no one but the Executive Director who was permitted to do so. The Executive Director could not have legally recused himself from acting in Petsinger's case.

■ Petsinger's final argument is that the hearing examiner erred in assigning to him the burden of proving what services are "appropriate or available or needed." He claims that the burden of determining the services a client can request is on the counselor. It is clear from the record that the only burden the hearing examiner placed upon Petsinger was that of identifying the services he wanted OVR to provide. This was certainly reasonable and not incorrect as a matter of law, because there is no way OVR or his counselor could know what Petsinger wanted until he specified such. The hearing examiner did not require Petsinger to prove that he was eligible for the requested services. The services granted were those OVR did not object

to providing. The services denied were denied not due to a lack of proof, but because the hearing examiner concluded that she could not grant the services as a matter of law. Further, we agree with OVR that Petsinger did not object at the time of either hearing to proceeding first with his case, and that he did not raise the issue in his request for review of the hearing examiner's decision.

Accordingly, we conclude that Petsinger was granted a fair hearing on his appeal of a denial of services, and that OVR properly dismissed that appeal.

## ORDER

AND NOW, this 20th day of December, 1996, the order of the Office of Vocational Rehabilitation dated February 5, 1996 is hereby affirmed.