# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamont Henderson,                    :
                    Petitioner       :
                                     :
            v.                       :     No. 86 M.D. 2018
                                     :     Submitted:  August 3, 2018
John Wetzel, Secretary of            :
Pennsylvania Department of           :
Corrections; and Theresa DelBlaso,   :
Superintendent of SCI Mahanoy,       :
                    Respondents      :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  October 11, 2018**

Before this Court are the preliminary objections (POs) of John Wetzel, Secretary of Pennsylvania Department of Corrections (Secretary), and Theresa DelBalso, Superintendent of State Correctional Institution (SCI) Mahanoy (Superintendent)[1] (together, Respondents), to the pro se Petition for Writ of Habeas Corpus (Petition) filed by Lamont Henderson.  In the Petition, Henderson, who alleges he is elderly, has no right eye, is legally blind in his remaining eye, and, for more than 35 years until May 23, 2017, has held "single-cell status" within the SCIs

---

[1] Although the Petition for Writ of Habeas Corpus spells Superintendent's last name "DelBlaso," it appears that the correct spelling is "DelBalso."

and county jails in which he has been housed (Petition ¶¶ 4, 6-7, 15, 19),[2] seeks an order directing:

> Respondents to restore Petitioner Henderson's single-cell status on the special needs unit due to Petitioner's well documented disability, the new and current double-cell confinement is in violation of the Eighth and Fourteenth Amendments to the United States Constitution[3] and in violation of the Americans with Disabilities Act ("ADA")[4] and [Section 504 of] The Rehabilitation Act [of 1973 (Rehabilitation Act)].[5]

(*Id.* at 1.)  In their POs, Respondents assert that, if the Petition is viewed as a writ of habeas corpus, this Court lacks jurisdiction, and, if the Petition is viewed as a writ of mandamus, Henderson has failed to state a claim upon which relief can be granted (demurrer).  Under either theory, Respondents argue, the Petition should be dismissed.

---

[2] In ruling on a preliminary objection in the nature of a demurrer, which Respondents assert here, "the Court must accept as true all well-pleaded facts and all reasonable inferences deducible therefrom; however, we need not accept conclusions of law." *Marin v. Sec'y of Commonwealth*, 41 A.3d 913, 914 n.2 (Pa. Cmwlth. 2012), *aff'd per curiam*, 66 A.3d 250 (Pa. 2013).  The Court will sustain a demurrer "only where it is clear and free from doubt that the law will not permit recovery under the alleged facts." *Id.*

[3] The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Fourteenth Amendment relevantly states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

[4] 42 U.S.C. §§ 12101-12213.  Section 202 of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

[5] 29 U.S.C. § 794.  In relevant part, Section 504 mandates the following, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *Id.*

The Petition was originally filed in the Court of Common Pleas of Schuylkill County (common pleas), but, after considering Respondents' Answers to a Rule to Show Cause issued by common pleas, it transferred the Petition to this Court believing this Court has original jurisdiction.[6] The Petition makes the following averments.

Henderson suffers from a variety of physical impairments, including the above-mentioned visual impairments and newly-diagnosed PE (pulmonary embolism) blood clots in both lungs and "2 percent cancer cells in his neck." (*Id.* ¶¶ 4, 6-7, 24.) His physical impairments render him legally disabled and a "qualified" individual under the Rehabilitation Act because they substantially limit one or more of his major life activities and there is a record of his impairment in his medical records. (*Id.* ¶¶ 8, 51.) For over 35 years, Henderson maintained single-cell status in multiple SCIs and county jails. In the past, Henderson was assaulted by cell mates due to his disability and inability to adequately defend himself from non-disabled inmates. In 2002, Henderson mistakenly was given a cell mate at SCI-Dallas, who seriously assaulted and robbed him of items he had purchased from the commissary. He was not able to adequately defend himself against the cell mate due to his disability. After the assault, Henderson's single-cell status was annually maintained by prison officials at SCI-Dallas and SCI-Somerset for the following 14 years. Similarly situated inmates who suffer from vision impairment disabilities are given single cells for their safety.

---

[6] Common pleas issued the Rule to Show Cause as to why the relief requested should not be granted. After filing an answer that explained why habeas corpus relief should not be granted, but did not directly respond to each of the numbered paragraphs of the Petition, Respondents filed an amended answer doing so and incorporating its prior answer. They asserted that, if the Petition was read as requesting relief in the nature of mandamus, common pleas lacked jurisdiction to grant that relief. Although common pleas issued the Rule to Show Cause to which Respondents filed a response, only the Petition and Respondents' POs are currently before this Court.

On or about March 10, 2017, Henderson was told by B.H., a member of SCI-Somerset's medical staff, that B.H. was putting a transfer in for Henderson and was removing Henderson's single-cell status due to Henderson's complaints against B.H. for lack/delay of medical treatment. It is a Department of Corrections (DOC) practice to use a vote sheet to remove an inmate's single-cell status, which records the votes of various SCI and DOC officials, and each official who votes no is required to provide a reason. When Henderson told B.H. that he needed a single cell due to his vision impairment disability, he would be in great danger if he was double celled, and no vote sheet had been issued to remove Henderson's single-cell status, B.H. responded "he could get around the 'vote sheet'" requirement and change Henderson's status without a vote sheet. (Petition ¶¶ 17-18.) On May 23, 2017, Henderson was transferred to SCI-Mahanoy, where he was placed in a double cell. Henderson advised a unit manager at SCI-Mahanoy and Superintendent that he had been single-cell status for over 35 years due to his vision impairment, but Henderson's request for a single cell was denied. Henderson's status was changed without the use of a "collective facility vote sheet," thereby violating his due process rights. (*Id.* ¶¶ 21-22, 25.)

DOC receives federal funds to accommodate inmates with disabilities, and SCI-Mahanoy (as well as other SCIs) has a "special needs" unit, "A-block," that houses disabled inmates, which is closest to the medical department. (*Id.* ¶¶ 28-30, 32.) At the time of the Petition, Henderson was housed on "F-block." (*Id.* ¶ 31.) Pursuant to DOC's disability accommodation policy, Henderson has requested, and been denied, housing on the "A-block" multiple times by Superintendent. (*Id.* ¶¶ 33, 45.) Prior to the removal of his single-cell status, Henderson was not evaluated by an optometrist, and no optometrist issued a report indicating that Henderson's

4

eyesight "ha[d] been restored, [or] remove[d] him from qualifying as a 'disable[d] person' . . . under the ADA or Rehabilitation Act." (*Id.* ¶¶ 26-28.) Despite no change in Henderson's disability and his risk of assault by a cell mate due to his disability and inability to defend himself, Superintendent indicated that Henderson's single-cell status was removed because he no longer needed a single cell.[7] While DOC's disability accommodation policy provides a process for inmates to request accommodations, it contains no guidance or instructions to be used in deciding whether to remove the accommodation, leaving disabled inmates vulnerable to the improper removal of an accommodation without adequate due process.

Henderson is a non-smoker and does not use any nicotine products, yet following his transfer to SCI-Mahanoy, he was placed in cells "with a number of young and aggressive inmates" who smoked and with whom Henderson was not compatible. (*Id.* ¶¶ 9, 19, 34.) Henderson's exposure to second-hand smoke for six months has resulted in his experiencing unwarranted and excessive coughing, eye burning, and headaches. He has been robbed of his possessions by either his cell mates or prison guards; he is unsure who is responsible due to his visual impairment. As a result of his vision impairment, "he is in danger of being seriously assaulted by random cell mates," and he cannot defend himself physically against the non-disabled, younger cell mates. (*Id.* ¶ 38.) Additionally, SCI-Mahanoy's double cells use metal double bunkbeds, the single cells use metal single bunkbeds, and the handicap single cells have "railings to accommodate those with disabilities," like

___

[7] Attached to the Petition is Superintendent's response to Henderson's Accommodations Request in which it is stated that the Inmate Disability Accommodations Committee had reviewed his request and SCI-Mahanoy's response, as well as the accommodations policy and the medical director's findings, and agreed with the denial of the request. (Petition, Ex. A.) The reason for upholding the denial was that he did "have a disability, but the disability is already being reasonably accommodated by the institution." (*Id.*)

5

Henderson. (*Id.* ¶ 40.) Henderson was assigned to the lower bunk due to being elderly, blind, and his inability to see to climb up to the top bunk. This assignment has caused Henderson to injure his head because when he wakes up and rises, he strikes his head on the top bunk due to his vision impairment.

Superintendent has intentionally discriminated against him "by failing to restore his single-cell [status] when . . . made aware by his file that he qualifies as a disable[d] person, that he was "at risk of being assaulted again," and that his single-cell status was removed without due process. (*Id.* ¶ 50.) Henderson has used the grievance and administrative remedies available to him, which were denied, as were his appeals from those determinations. There are no other remedies available to him "to promptly and effectively address and correct these constitutional [violations] and ADA and . . . Rehabilitation Act violations" and, therefore, a writ of habeas corpus is appropriate. (*Id.* ¶ 55.)

In his memorandum of law in support of the Petition, filed with common pleas and transferred to us, Henderson explains that the writ of habeas corpus can be used to safeguard against arbitrary and lawless action. Citing precedent,[8] he asserts that the ADA and Rehabilitation Act apply to state prisons and provide protections, such as requiring reasonable accommodations to be made for disabled or "qualified" inmates. Henderson argues that Respondents have admitted that he is disabled, but have failed to properly accommodate his disability, which requires that he be placed in a single, handicap cell, like the other visually-impaired inmates within DOC. This, he asserts, violates the ADA and Rehabilitation Act. He further argues there is a violation of his Eighth Amendment right against cruel and unusual punishment

---

[8] *See, e.g.*, *Manley v. Office of Vocational Rehab.*, 654 A.2d 25, 26-27 (Pa. Cmwlth. 1994); *Yeskey v. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997) (ADA and Rehabilitation Act apply to prisons), *aff'd sub nom. Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

because Respondents have failed to act by placing him in a single cell despite knowing that he is at a substantial risk of being assaulted, as he was in the past, due to his known disability and inability to protect himself. He also asserts there is an Eighth Amendment claim due to his exposure to second-hand smoke, particularly given his recent diagnosis of PE blood clots in both lungs, and Superintendent's deliberate indifference to Henderson's health, safety, and welfare. Finally, he argues there is a violation of his Equal Protection Rights, under a class-of-one theory, because he is being treated differently than other visually-impaired inmates in DOC's custody. Respondents cannot, Henderson asserts, provide one accommodation to some blind, disabled persons in their custody, and not to others.

While the matter was pending in this Court, Henderson filed a motion for injunction seeking to be moved from his double cell to a handicapped, disability cell with no metal top bunk because he keeps striking his head on the top bunk in his current cell due to his inability to see. Respondents filed an answer. Henderson filed a response indicating that, on April 6, 2018, he "was moved to a safe, non-hazardous cell with no top metal bunk, metal ladder, metal hanging lip or obstacles which removed all danger to [him]." (Petitioner's Reply to Respondents' Answer ¶ 3.) By order dated May 22, 2018, we dismissed the motion for injunction as moot.

Prior to our ruling on the motion for injunction, Respondents filed their POs.[9] In his brief in opposition to the POs, which was filed on July 23, 2018, Henderson responds that this Court has jurisdiction either as an ancillary matter or because it was transferred to this Court by common pleas under, respectively, Sections 761(c)

---

[9] A third PO was filed related to improper service; however, proper service on Respondents has been effectuated, and that PO was overruled in this Court's order dated May 22, 2018.

or 5103(a) of the Judicial Code, 42 Pa. C.S. §§ 761(c), 5103(a).[10] He further explains that he has stated a claim for relief. Henderson states, in his brief, that he remains in the safe, non-hazardous cell. (Henderson's Brief (Br.) at 7.)

In the Petition, Henderson requests that his single-cell status be restored and he be placed in a single cell as an accommodation for his disabilities. He requested similar relief, that he be placed in a safe, non-hazardous cell, in his motion for injunction. Since the filing of the Petition, Henderson has been "moved to a safe, non-hazardous cell with no top metal bunk, metal ladder, metal hanging lip or obstacles which [has] removed all danger to [him]," and he remains in a safe, non-hazardous cell. (Petitioner's Reply to Respondents' Answer ¶ 3; Henderson's Br. at 7.) "Intervening changes in the factual matrix of a pending case, which eliminate an actual controversy and make it impossible for the requested relief to be granted, render a legal question moot." *Zemprelli v. Thornburgh*, 466 A.2d 1123, 1125 (Pa. Cmwlth. 1983) (dismissing *quo warranto* action seeking the removal of a government official from his appointed position as moot when, during the course of the proceedings, the official resigned from office). "Where . . . there is no meaningful relief to be ordered, a matter is moot." *Krenzel v. Se. Pa. Transp. Auth.*, 840 A.2d 450, 455 (Pa. Cmwlth. 2003). Such cases should be dismissed. *Johnston v. Lehman*, 676 A.2d 1287, 1289 (Pa. Cmwlth. 1996). Here, Henderson has been placed, and remains, in a safe, non-hazardous cell, as he has requested. As there is no meaningful relief left for this Court to grant, the Petition is moot and will be dismissed as such.

---

[10] Henderson cites Section 761(f) of the Judicial Code as the basis for this Court's jurisdiction due to common pleas' transferring the Petition to this Court. There is no Section 761(f), but Section 5103(a) addresses the transfer of matters improperly filed in one court to the court with the proper jurisdiction.

Although the current Petition is moot, we observe that if the Petition was viewed as a writ of habeas corpus or a writ of mandamus, respectively, this Court would lack jurisdiction[11] and Henderson would not have stated a claim upon which relief can be granted.[12] However, the Petition's averments could also be construed as asserting claims that Henderson's rights under the ADA, the Rehabilitation Act, and the Eighth and Fourteenth Amendments to the United States Constitution have been violated by, among other things, the alleged retaliatory and improper removal of his single-cell status, the refusal to properly accommodate his documented disabilities, and his placement in a double cell notwithstanding the risk that he could, as he had before, be attacked due to his disability and associated inability to protect himself. *See Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) ("[A]llegations of a pro se complainant are held to a less stringent standard . . . [and] [i]f a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the [POs] will be overruled."). The POs filed by Respondents here would not have addressed such claims and, thus, those claims would have moved forward had the Petition not become moot.

---

[11] *See Warren v. Dep't of Corr.*, 616 A.2d 140, 142 (Pa. Cmwlth. 1992) (concluding that Commonwealth Court does not have jurisdiction to hear writs of habeas corpus); Pennsylvania Rule of Criminal Procedure 108(b), Pa.R.Crim.P. 108(b) (a petition for writ of habeas corpus challenging the conditions of confinement shall be filed in the judicial district in which the petitioner is confined).

[12] *See Seeton v. Adams*, 50 A.3d 268, 274 (Pa. Cmwlth. 2012) (concluding that mandamus is an extraordinary writ and can only compel a government agency to exercise its discretion, not how to exercise that discretion); *Frankenberry v. Ferguson* (Pa. Cmwlth., No. 105 C.D. 2017, filed July 12, 2017), slip op. at 8-9 (holding that decisions related to an inmate's housing status, such as single-cell or "Z" code status, are within the discretion of the prison administrators). *Frankenberry* is cited as persuasive pursuant to this Court's Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a).

Nevertheless, because there is no meaningful relief left for this Court to grant, the Petition is now moot and is dismissed as such. Correspondingly, Respondents' POs are also dismissed as moot.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamont Henderson,                       :

                 Petitioner      :

                       :

            v.              :    No. 86 M.D. 2018

                       :

John Wetzel, Secretary of      :

Pennsylvania Department of    :

Corrections; and Theresa DelBlaso,  :

Superintendent of SCI Mahanoy,   :

               Respondents   :

## O R D E R

NOW, October 11, 2018, the Petition for Writ of Habeas Corpus (Petition) filed by Lamont Henderson is **DISMISSED AS MOOT**. Having dismissed the Petition as moot, the preliminary objections filed by John Wetzel, Secretary of Pennsylvania Department of Corrections and Theresa DelBlaso, Superintendent of SCI Mahanoy, to the Petition are likewise **DISMISSED AS MOOT**.

 

 

                             _____

                             **RENÉE COHN JUBELIRER,** Judge