Marsha C. LEWIS, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 8, 2002.

Decided Jan. 7, 2003.

Margaret J. Fried, Pittsburgh, for petitioner.

Carol J. Mowery, Harrisburg, for respondent.

BEFORE FRIEDMAN, J., SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

Marsha C. Lewis (Claimant) petitions for review of the June 25, 2002, order of the Unemployment Compensation Board of Review (UCBR), which affirmed the decision of a referee to dismiss Claimant's appeal as untimely. We vacate and remand.

On December 28, 2001, Claimant was discharged from her job as a sales associate at Kaufmann's Department Store (Employer). Claimant applied for unemployment benefits at the Duquesne UC Service Center (Service Center). At

Claimant's request, on January 25, 2002, the Pittsburgh District Office of the Pennsylvania Office of Vocational Rehabilitation (OVR) faxed the Service Center a psychological report, which indicated that: (1) Claimant's intellectual functioning is in the borderline range;[1] (2) Claimant's reading comprehension is below the range of functional literacy when Claimant is asked to read at speeds typical of the population; (3) Claimant earned a very low stanine score of "1" on aptitude tests evaluating verbal reasoning, numerical ability, language usage, word knowledge and perceptual speed and accuracy;[2] and (4) Claimant has a cognitive disorder, learning disorder, spelling disorder, reading disorder (speed of reading), mathematics disorder, anxiety disorder and a mixed anxiety-depressive disorder. (O.R., Item No. 2, Report at 3–5, 7, 9; Item No. 4.)

The Service Center mailed two determination notices, dated January 24, 2002, to Claimant at her last known post office address. In one of the notices, the Service Center determined that Claimant was not entitled to benefits because she violated a work rule. In the other notice, the Service Center informed Claimant of a non-fault overpayment. The notices were not returned by postal authorities as undeliverable. The notices informed Claimant that she had fifteen days from the date of the decisions to file an appeal and that the last day for filing a valid appeal was February 8, 2002. Claimant filed a *pro se* appeal on February 12, 2002, four days late. (UCBR's Findings of Fact, Nos. 1–4.)

The matter was assigned to a referee, who conducted a hearing on the timeliness of Claimant's appeal. When the referee asked Claimant to spell her last name for the record, Claimant attempted to spell her name but faltered. Claimant apologized and explained that she was dyslexic and nervous. Claimant then misspelled her last name "L-i-w-e-s" and apologized again. Ultimately, the referee spelled "L-e-w-i-s" for Claimant, who confirmed the spelling. (N.T. at 1.) The referee subsequently offered several Service Center documents for admission into the record; however, the referee did *not* offer the psychological report that Claimant had submitted to the Service Center. Afterward, Claimant offered the following testimony:

> There was … confusion with the appeal. I called several times back and forth to the unemployment office because I didn't quite understand what I was doing with my forms. So I had to call back to ask…. I had to keep calling back because I wasn't sure of how I was supposed to go about filling out the form…. So what I did was I called upon a couple of people, which [included] one [of] my teachers.[3] I took it into school, she read it and helped me fill it out the best that she could. And then I went back and I called to make sure that everything that I had on it was right and then I sent the form in….

---

1. The report indicates that Claimant has a verbal IQ of 76 and a full scale IQ of 77. (O.R., Item No. 2, Report at 3.) Although there is more to a diagnosis of mental retardation than IQ, we note that special education schools classify individuals with an IQ lower than 80 as "educable mentally retarded." *See* 22 Pa.Code § 59.1(a)(2)(i). We further note that there is measurement error of approximately five points in assessing IQ, and that a person with an IQ close to 70 may be eligible

for state mental retardation services. *See* 55 Pa.Code § 4210.101a.

2. Claimant has attempted seventeen times to obtain a GED, but she has been unable to do so. (O.R., Item No. 2, Report at 2.)

3. Claimant, who was forty-three years of age in September of 2001, has taken GED classes at various locations. (O.R., Item No. 2, Report at 2.)

[T]he day that I sent it in, I made sure that I called and spoke to someone at the unemployment office and asked them ... can I still send this in?

(N.T. at 4.) Based on the evidence presented, the referee dismissed Claimant's appeal as untimely.

Claimant filed a *pro se* appeal with the UCBR, which found that Claimant's late filing of the appeal was due to her confusion about the appeal process. (UCBR's Findings of Fact, No. 6.) Based on that finding, the UCBR affirmed the referee's decision. Claimant then contacted an attorney, who filed a *nunc pro tunc* request for reconsideration, which the UCBR denied. Claimant now petitions this court for review.[4]

Claimant argues that this court should remand the case to the UCBR for the making of necessary findings of fact as to whether Claimant is entitled to a *nunc pro tunc* appeal. We agree.

In *Cook v. Unemployment Compensation Board of Review*, 543 Pa. 381, 384–85, 671 A.2d 1130, 1131 (1996), our supreme court stated:

[1] where an appeal is not timely because of non-negligent circumstances ... as they relate to appellant ... and [2] the appeal is filed within a short time after the appellant ... learns of and has an opportunity to address the untimeliness, and [3] the time period which elapses is of very short duration, and [4] appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

Thus, one of the questions before the UCBR was whether Claimant's intellectual functioning level constituted a non-negligent circumstance justifying the filing of an appeal four days late. It is apparent that the UCBR did not make sufficient findings relative to this issue.

Moreover, showing a breakdown in the administrative process may justify an appeal *nunc pro tunc*. *Stana v. Unemployment Compensation Board of Review*, 791 A.2d 1269 (Pa.Cmwlth.2002). Thus, another question before the UCBR was whether the Service Center's failure to give a person with Claimant's intellectual functioning level adequate instruction about the filing of an appeal constituted a breakdown in the administrative process that would justify an appeal *nunc pro tunc*.[5] It is apparent that the UCBR did not make sufficient findings relative to this issue.

The UCBR asserts in its brief that it failed to make such findings because the record did not contain evidence of Claimant's learning disability and language impairments. (UCBR's brief at 5.) However, the record certified to this court by the UCBR contains the OVR's psychological evaluation of Claimant. Moreover, if the UCBR found that the record created at the referee's hearing was deficient in this regard, the UCBR was *required* to direct the taking of additional evidence pursuant to 34 Pa.Code § 101.104(c), which states:

---

4. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. We note that, in *Manley v. Office of Vocational Rehabilitation*, 654 A.2d 25 (Pa. Cmwlth.1994), this court stated that the law requires a public entity receiving federal financial assistance to make reasonable accommodations for the known physical or mental limitations of an otherwise qualified handicapped applicant. This court stated that, in some cases, the public entity might have to send someone to an applicant's home or extend the application process until the applicant was able to complete the process. *Id.*

(c).... The [UCBR] will review the previously established record and determine whether there is a need for an additional hearing. Under section 504 of the Unemployment Compensation Law (43 P.S. § 824), the [UCBR] ... may direct the taking of additional evidence, if in the opinion of the [UCBR], the previously established record is not sufficiently complete and adequate to enable the [UCBR] to render an appropriate decision. The further appeal *shall be allowed* and additional evidence *required* in any of the following circumstances:

(1) Whenever the further appeal involves a *material point* on which the record below is silent or *incomplete* or appears to be erroneous.

(2) It appears that there may have been a denial of a *fair hearing under the rules* ....[6]

34 Pa.Code § 101.104(c) (emphasis added).

Here, Claimant stated in her appeal to the UCBR that she did not understand what to do with the appeal papers because of her "mental illness," which she identified as dyslexia. (O.R., Item No. 9.) Claimant had mentioned her dyslexia to the referee and had testified about her confusion about the filing of an appeal, but, as the UCBR points out here, the record created at the referee's hearing did not contain the OVR's psychological report detailing Claimant's limited intellectual capabilities. Thus, the record was incomplete with respect to a material point of Claim-

ant's appeal, in which case the UCBR was required to take additional evidence.

Moreover, it appears that the referee may have denied Claimant a fair hearing under the rules. The regulation at 34 Pa.Code § 101.21 states that, where a party is not represented by counsel at an unemployment compensation hearing, the tribunal before whom the hearing is being held should give the party "every assistance compatible with the impartial discharge of its official duties."[7] 34 Pa.Code § 101.21. Here, at the start of the hearing, the referee offered several Service Center documents for admission into the record. However, the referee did *not* offer the psychological report that Claimant had submitted to the Service Center. (N.T. at 2.) By offering selected Service Center documents that did not help Claimant and by failing to offer documents that would have aided Claimant, the referee did *not* provide every assistance in an impartial manner.

Because the UCBR failed to make sufficient findings to determine whether Claimant is entitled to a *nunc pro tunc* appeal and because the UCBR failed to take additional evidence to enable the UCBR to make such findings, we vacate and remand for further proceedings.

Judge SIMPSON concurs in the result only.

*ORDER*

AND NOW, this 7th day of January, 2003, the order of the Unemployment

---

**6.** If the UCBR determines that a further hearing is necessary, the case shall be remanded to a referee for the purpose of scheduling another hearing to receive from the parties the additional information as may be pertinent and material to a proper conclusion in the case. 34 Pa.Code § 101.104(d).

**7.** This means that the referee has a responsibility to assist a *pro se* claimant at a hearing

so that the claimant may adequately develop the facts necessary for a decision. *Coates v. Unemployment Compensation Board of Review*, 676 A.2d 742, 744 n. 3 (Pa.Cmwlth. 1996). Here, although Claimant informed the referee that she had dyslexia, the referee made no inquiries about the effect of Claimant's dyslexia on her ability to understand the appeal process.

Compensation Board of Review (UCBR), dated June 25, 2002, is hereby vacated, and this case is remanded to the UCBR for further proceedings as set forth in the foregoing opinion.

Jurisdiction relinquished.