IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ram Basnet,                                       :
                      Petitioner                  :
                                                  :
             v.                                   :
                                                  :
Unemployment Compensation                         :
Board of Review,                                  :    No. 1099 C.D. 2021
                      Respondent                  :    Argued:  September 15, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                              FILED:  October 19, 2022


            Ram Basnet (Claimant) petitions this Court for review of the
Unemployment Compensation (UC) Board of Review's (UCBR) September 7, 2021
order dismissing her appeal for untimeliness.  Claimant presents two issues for this
Court's review: (1) whether the UCBR should grant *nunc pro tunc* relief where
Claimant was non-negligent in filing her late appeal after encountering significant
language barriers in understanding the Referee's decision and related appeal
instructions; and (2) whether the UCBR should grant *nunc pro tunc* relief where the
Department of Labor and Industry (Department) and the UCBR did not provide
adequate language assistance to Claimant in accordance with federal law and
guidance, creating an administrative breakdown that led to her late appeal.  After
exhaustive review, this Court affirms.

            On March 22, 2020, Claimant applied for UC benefits.  On November
10, 2020, the Duquesne UC Service Center determined that Claimant was ineligible

for UC benefits under Section 401(d)(1) of the UC Law (Law).[1]  Claimant appealed from the UC Service Center's determination via electronic transmission (e-mail) on November 30, 2020.  A Referee held a telephonic hearing on December 15, 2020, at which the Referee got Claimant's voicemail when she telephoned Claimant twice.  On December 22, 2020, the Referee issued a decision which dismissed Claimant's appeal as untimely pursuant to Section 501(e) of the Law.[2]

On February 12, 2021, Claimant appealed from the Referee's decision by an e-mail her counsel (Counsel) sent requesting *nunc pro tunc* relief.[3]  On February 26, 2021, the UCBR notified Claimant that she needed to request a hearing on the timeliness issue if she believed her appeal should be deemed timely.  On March 8, 2021, Claimant requested a hearing.  A Referee held a telephonic remand hearing on June 17, 2021, to address the timeliness issue.  Claimant was represented by Counsel at the hearing, and an interpreter was provided for Claimant.  On September 7, 2021, the UCBR dismissed Claimant's appeal from the Referee's decision pursuant to Section 501(e) of the Law.  Claimant appealed to this Court.[4, 5]

Initially,

> [u]nder Section 501(e) of the Law, an appeal must be filed
> within [15] days from the date a determination is mailed
> to the claimant's last known address.  At the conclusion of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1) (referring to ability and availability to work).

[2] 43 P.S. § 821(e).

[3] Claimant had been acting *pro se* up to that point.

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[5] El Comité de Apoyo a los Trabajadores Agrícolas, the Community Justice Project, Community Legal Services of Philadelphia, Jewish Family and Community Services Pittsburgh, Justice at Work Pennsylvania, Literacy Counsel of Southwestern Pennsylvania, and the Mon Valley Unemployed Committee filed an amicus curiae brief in support of Claimant.

the [15]-day period, the determination becomes final, and the [UCBR] no longer has jurisdiction to consider the matter. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008). In limited circumstances, however, the limitations period can be waived, and the appeal will be considered timely as *nunc pro tunc*, or "now for then." *Id*. at 198. An appeal *nunc pro tunc* is only warranted, however, in extraordinary circumstances "involving fraud or some breakdown in the court's operation," or where the delay is caused by non-negligent circumstances either by the claimant or a third party. *Cook v. Unemployment Comp. Bd. of Rev.*, . . . 671 A.2d 1130, 1131 ([Pa.] 1996) (internal quotations omitted) (quoting *Bass v. Cmwlth.*, . . . 401 A.2d 1133, 1135 ([Pa.] 1979)). The Pennsylvania Supreme Court characterized administrative breakdown as occurring when "an administrative body acts negligently, improperly or in a misleading way." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev.*, . . . 746 A.2d 581, 584 ([Pa.] 2000). Where non-negligent circumstances cause the untimeliness of an appeal, the appeal must be filed within a short period of time after learning of the untimeliness. *Cook*, 671 A.2d at 1131. It is well[ ]settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one.

*Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021).

Claimant first argues that the UCBR should have granted *nunc pro tunc* relief because Claimant was non-negligent in filing her late appeal after encountering significant language barriers in understanding the Referee's decision and related appeal instructions. Specifically, Claimant contends that she was deprived of her right to an appeal from the Referee's decision because she is a Nepali speaker who could not comprehend the notices she received in English, she struggled to reach the UC Service Center by telephone, she had to seek other support in her community, and she acted reasonably in the handling of her UC appeal, amidst the COVID-19 pandemic, and should not be denied an opportunity to be heard on the

3

merits of her claim. Claimant cites *Lewis v. Unemployment Compensation Board of Review*, 814 A.2d 829 (Pa. Cmwlth. 2003), to support her position.

The UCBR rejoins that Claimant testified that she does not read or write English, but that alone is not good cause for filing a late appeal. The UCBR maintains that non-English speaking claimants using the UC system have an obligation to take reasonable steps to translate the documents they receive. The UCBR asserts that Claimant did not do so. The UCBR declares that a lack of English proficiency, alone, is not non-negligent conduct allowing a party to file an appeal at any time. The UCBR proclaims that because Claimant failed to prove what steps she took to have the Referee's decision translated, Claimant failed to prove that her late appeal was due to non-negligent circumstances.

In *Lewis*, a claimant who suffered from cognitive disorder, learning disorder, spelling disorder, reading disorder, mathematics disorder and a mixed anxiety-depressive disorder filed her appeal four days late. When questioned regarding the reason for her late appeal, she explained that because she was confused by the unemployment forms: (1) she called the unemployment office several times for help; (2) she solicited others for help, going so far as to take her appeal form to her school to solicit help from a teacher; (3) she filled out the form to the best of her ability; (4) she called the unemployment office again to make sure that she filled out the form properly; and (5) she called the unemployment office on the day she filed to determine whether it would accept her appeal form.

The Referee dismissed the claimant's appeal as untimely. The claimant appealed to the UCBR, which affirmed the Referee's decision. The claimant appealed to this Court, which remanded to the UCBR for the making of necessary factual findings with respect to whether the claimant was entitled to a *nunc pro tunc* appeal. This Court explained:

4

> The UCBR assert[ed] in its brief that it failed to make such findings because the record did not contain evidence of [the c]laimant's learning disability and language impairments. However, the record certified to this [C]ourt by the UCBR contain[ed] the [Pennsylvania Office of Vocational Rehabilitation's] psychological evaluation of [the c]laimant. Moreover, if the UCBR found that the record created at the [R]eferee's hearing was deficient in this regard, the UCBR was *required* to direct the taking of additional evidence . . . .

*Lewis*, 814 A.2d at 831. Significantly, the claimant in *Lewis* was not represented by counsel at the Referee hearing, and her appeal was filed only four days late.

> Here, when questioned by her attorney, Claimant testified:[6]
>
> CL And where did you most recently work?
>
> C Bridgford Downtown Hotel Monaco.
>
> . . . .
>
> CL Why did you leave that job?
>
> C Okay. I was working and then last year due to Corona [sic], the hotel was closed. That's why.
>
> CL Is that when you applied for unemployment?
>
> C Yes. My boss at my work gave me a link and told me I should fill it out.
>
> CL **Did anyone help you apply for unemployment**?
>
> C Okay. So, **a friend**, **a Nepali friend of mine helped me**, but she [sic] it was over the phone. Not in person.
>
> CL **Did you ever talk to anyone at the unemployment office**?
>
> C **No**.
>
> CL Did any -- did you receive any documents from unemployment with anything in the Nepali language?

---

[6] Claimant testified through an interpreter at the Referee hearing.

5

C No.

CL Did anyone ever tell you [that] you could get help in the Nepali language if you needed it?

C No, they did not.

CL Was there -- what language was the website when you filed your claim?

C **It was in English**, **but my friend did the video call with me** and told me I should this, [sic] after this. He [sic] . . . explain me [sic] in English. Sorry, explain me [sic] step by step.

. . . . [7]

C So, **she showed me everything step by step** over the video.

Certified Record (C.R.) at 135-36 (emphasis added).

Claimant further related:

CL When you -- excuse me, after you filed your unemployment claim, did you try to get help from any other agency to deal with the unemployment?

C Yes. I asked Natalya Shisman [(Shisman)[8]] to help.

CL And how did you find out about her?

C Okay. So, you can see that that [sic] [inaudible] is the one who brought me here in this count[r]y, so I went there with other problems. I don't think I need to tell you all those problems, but I went there and while talking to them, you know, I did talk about unemployment also. That's how.

CL Why did you ask them for help with unemployment?

---

[7] The interpreter interrupted because she did not know Claimant's friend's gender. The Referee advised her to ask Claimant.

[8] Shisman is a service coordinator at amicus curiae Jewish Family Community Services Pittsburgh. *See* C.R. at 138.

C Okay. So, you know, lots of people was coming and it was -- it say that lots of money, you know, so I thought that the police will come and arrest me. I was very afraid. That is the reason I told [Shisman] and she told [Counsel], and that's how I got help.

CL When you filed an [a]ppeal to the unemployment's decision,[9] did anyone help you file the [a]ppeal?

C No.

C.R. at 137. Finally, Claimant described:

CL Did you get papers after the hearing that told you could file an [a]ppeal from that Referee's decision?

C I'm not sure if I did or if I did not. I'm not sure if I did or if I did not. [Sic] If I did, also, then I will not know.

CL When you get written papers from the unemployment office in English, are you able to read them and understand them?

C Not only from there. From anywhere. If they send it to me in English, I will not be able to read and understand.

CL Who helps you figure out what to do if you get written papers?

C I have not received anything before this. Now, [Shisman] and [Counsel] are helping me.[10]

CL I have no other questions for my client at this time.

C.R. at 138.

Importantly, Claimant never explained why she did not contact her "friend" who helped her apply for UC benefits to interpret the papers she received in response thereto, at any point thereafter. *Id.* Nor did she explain why she waited

---

[9] The record does not disclose to which decision Counsel is referring, i.e., the UC Service Center's, the Referee's or the UCBR's decision.

[10] Shisman testified that she did not begin working with Claimant until December 2020. *See* C.R. at 139.

7

until after receiving the Referee's decision, rather than prior to that time, to reach out to Shisman and Counsel. *See id.*

Curiously, Claimant testified that she received the notice for the first Referee hearing, and attempted to be available to participate. Specifically, Claimant related:

> CL I wonder if we can ask to [sic] talk about the telephone hearing that was scheduled for December 15th[,] [d]o you remember that there was a hearing scheduled for that date?
>
> C Yes, I know.
>
> CL Can you -- were you planning to participate in that hearing?
>
> C Yes. So, the -- before, like one hour before the hearing, I put all the paper in front of me on the table and phone and was waiting.
>
> CL And what happened that day? Did you get a phone call from the Referee?
>
> C So, what happened that day is my phone was charged and then the ringer was full and the sound, the volume was high and I was waiting and then the phone didn't ring. All of, [sic] I think the Referee called me twice and left me a voice message, but I didn't hear the ring, so the voice message stated that we are not able to talk to you, so please don't call on this number. Call the office number. That's what it says. So, I called three times to the office and left a voice message, but nobody called me back.
>
> CL Do you remember when you called? Did you call that same day of the hearing?
>
> C So, same day. An hour after the hearing. I was waiting for the hearing and after an hour I called them and then on next day, [the] 16th, I called them and then again, I don't remember the exact day, but it was the week of Christmas. Not Christmas day, but that week. On the 23rd or 24th, I called them again.

C.R. at 137-38.

8

Although Claimant testified that her friend helped her apply for UC benefits, and that Shisman and Counsel helped her appeal from the Referee's decision, Claimant did not relay to the Referee how she was able to navigate the appeal process from the UC Service Center's decision, and/or how she was able to understand the hearing notice and/or the voice message the Referee left on her voicemail. It is Claimant's burden to prove that non-negligent circumstances caused her delay in filing, and she is claiming that a language barrier is the non-negligent circumstance that caused the delay. However, this testimony appears to show that Claimant, in fact, was able to obtain the help she needed to navigate the UC process, notwithstanding that she did not speak English.

In *Lewis*, the claimant described the steps she took to ensure that she responded appropriately to the papers she received from the Department, and ultimately appealed four days late. Here, there was no testimony that Claimant took any steps to ensure that she **timely** understood the Referee's decision, from which she ultimately appealed **43** days later. This Court cannot conclude that Claimant has met her burden because "the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one[,]" *Harris*, 247 A.3d at 1229, and where non-negligent circumstances cause the untimeliness of an appeal, the claimant must "show [the] non-negligent conduct beyond [her] control caused the delay[,]" *Hessou*, 942 A.2d at 198, and "the appeal must be filed within a short period of time after learning of the untimeliness." *Harris*, 247 A.3d at 1229 (quoting *Cook*, 671 A.2d at 1131). "[Claimant's] failure to take measures to ascertain the contents of the [Referee's decision] resulted in her delaying [sic] in filing the appeal until [February 12, 2021]. As a result, it was untimely and properly dismissed by the [UCBR]." *Guat Gnoh Ho v. Unemployment*

9

*Comp. Bd. of Rev.*, 525 A.2d 874, 875-76 (Pa. Cmwlth. 1987);[11] *see also Dull v. Unemployment Comp. Bd. of Rev.*, 955 A.2d 1077, 1080 (Pa. Cmwlth. 2008) ("[The c]laimant was prevented by her own negligence from filing a timely appeal because she neglected to have someone read her mail. *Cook* does not compel us to reverse the UCBR's decision in this case.").[12]

Claimant next argues that the UCBR should grant *nunc pro tunc* relief where the Department and the UCBR did not provide adequate language assistance to Claimant in accordance with federal law and guidance, creating an administrative breakdown that led to her late appeal. Specifically, Claimant contends that the Department failed to provide her with adequate notice about how to access free language interpretation, but even if it had, it was nearly impossible to get through on the UC Service Center hotline, the same statewide hotline that every claimant was calling for help with UC benefits during the COVID-19 pandemic. Amicus Curiae similarly assert that language access services are not only essential for UC claimants with limited English proficiency (LEP), but they are also a legal requirement for federally funded agencies like the Department. Amicus Curiae further proclaim that federal laws, regulations, and guidance obligate the Department to take certain action to make sure that LEP claimants have meaningful access to the UC program,

---

[11] In *Guat Gnoh Ho*, the claimant was out of the country when the UC Service Center's determination was delivered to her home. The claimant admitted that her husband had called her to notify her that she had received a letter, but, she alleged, he did not understand English and therefore could not inform her of the letter's contents. She asserted that she filed the appeal immediately upon her return to the United States. This Court held: "By applying to the [Department] for [UC] benefits, [the claimant] availed herself of our system of administrative justice. In doing so, she implicitly assumed a duty to comply with procedures which are designed to ensure a sound and evenhanded administration of justice or risk forfeiture of her claim." *Guat Gnoh Ho*, 525 A.2d at 875.

[12] In *Dull*, the claimant was illiterate and claimed that was the reason for her late appeal. This Court held that the claimant exercised no diligence at all, did not communicate with the UC Service Center regarding her difficulties, and failed to conduct her affairs in a reasonable manner by having someone open and read her mail.

including identifying LEP claimants and providing timely and accurate oral interpretation and written translation of vital documents at no cost. Amicus Curiae declare that failure to do so constitutes national origin discrimination under Title VI of the Civil Rights Act of 1964.[13]

The UCBR rejoins that United States Department of Labor Unemployment Insurance Program letters (UIPL) are "not binding authority upon this Court or the agencies of this Commonwealth since it is merely an administrative interpretation of federal law." *Montgomery Cnty. Head Start v. Unemployment Comp. Bd. of Rev.*, 938 A.2d 1137, 1141 (Pa. Cmwlth. 2007) (quoting *Glassmire v. Unemployment Comp. Bd. of Rev.*, 856 A.2d 269, 275 (Pa. Cmwlth. 2004)). The UCBR further retorts that the Department provides Babel notices[14] in numerous languages along with notices to claimants, but it is impossible to foresee and account for every language which may be spoken by a given claimant. The UCBR asserts that the fact that Claimant was not previously provided a Nepali speaking individual when she contacted the Department by telephone in October 2020 does not have any bearing on the timeliness of Claimant's appeal from the Referee's decision in January 2021.

In *Jenkins v. Unemployment Compensation Board of Review*, 202 A.3d 140 (Pa. Cmwlth. 2018), the claimant had filed an untimely appeal from the Referee's decision (Decision) because he was admitted into an in-patient facility at the time that the Decision was mailed to his home. The claimant asked for *nunc pro tunc* relief, which the UCBR denied. On appeal to this Court, the claimant argued that he should be allowed to file an appeal *nunc pro tunc* because his absence from

---

[13] 42 U.S.C. §§ 2000e-2 – 2000e-17.

[14] A Babel notice is a short notice included in a document or electronic medium in multiple languages informing the reader that the communication contains vital information, and explaining how to access language services to have the contents of the communication provided in other languages.

his mailing address due to medical reasons combined with his numerous attempts to contact the UC Service Center showed that he acted reasonably, i.e., his untimely appeal was not the result of his negligence. This Court agreed, explaining:

> [The c]laimant testified credibly that he attempted to contact the UC Service Center by phone but always got a busy signal. [The c]laimant point[ed] out that his appeal period coincided with the height of a funding crisis at the Department . . . that resulted in substantial staff reductions beginning in December 2016. [The c]laimant's credited testimony that he tried unsuccessfully to contact the UC Service Center by phone weigh[ed] in favor of granting *nunc pro tunc* relief since it [was] evidence that [the c]laimant acted reasonably to learn the status of his application but was unsuccessful due to no fault of his own.

*Id*. at 144-45 (footnote omitted). The *Jenkins* Court concluded: "[The c]laimant's absence from his mailing address during the appeal period was attributable to non-negligent conduct, *i.e.*, his admission to an inpatient drug treatment facility. [This Court] hold[s] that the Board erred in denying [the c]laimant's request to appeal *nunc pro tunc*." *Id*. at 145.

Here, Claimant contends that UC claimants' struggles to get through on the phone lines were also well documented throughout the COVID-19 pandemic, and the futility of calling the hotline became clear. Claimant asserts that the one time she was able to get through on the statewide hotline, the agent only spoke to her in English and Claimant was never connected to an interpreter. Claimant proclaims that this contravenes the Department's own Language Access Policy, which recognizes that "individuals who do not speak English or who are limited in their English proficiency [] may be unable to immediately obtain meaningful access to [the Department's] services," therefore: "[I]t is the policy of the Department . . . that once the individual with LEP is identified, the [Department's] staff must contact a qualified bilingual person through the [Department of General Services] Language

Service Contract to assist that person as soon as possible." Claimant Br. at 22 (quoting Department, Language Access Policy, "Communication with LEP Populations," July 20, 2020 (Language Access Policy)).[15] Furthermore, Claimant claims that language assistance "is to take place within the same time frame that services are delivered to non-LEP customers," and none of that happened for Claimant. Claimant Br. at 23 (quoting Language Access Policy).

However, Claimant did not testify that she told anyone at the Department that she only spoke Nepali before her attempted appeal from the Referee's decision. Nor did Claimant testify regarding her attempts to do so. Claimant testified that she does not speak English and that she cannot comprehend anything that comes in the mail that is written in English. *See* C.R. at 138. While this Court agrees that language access services are essential for LEP UC claimants, and are a legal requirement for federally funded agencies like the Department, as the UCBR stated: "[C]laimant did not testify that she sought help from her friend in translating the decision **or that she called the UC translation line for help**." UCBR Dec. at 2; C.R. at 145 (emphasis added).

Claimant's lawyer stated at oral argument before this Court that Claimant's affidavit (Affidavit), which she included with her appeal from the Referee's decision, and which was accepted into evidence at the remand hearing, is evidence that Claimant called the UC translation line for help. However, the only relevant statement in the Affidavit regarding Claimant's attempt to do so provided: "I tried to call the UC office many times. Finally[,] in October someone talked to me, but only in English." C.R. at 48. The fact that Claimant attempted to speak to someone in October, and the person who answered the phone spoke English, has no bearing on whether Claimant attempted to timely appeal from the Referee's decision

---

[15] *See* https://www.dli.pa.gov/about-dli/EO/LA-Policy/Pages/Notification.aspx (last visited Oct. 18, 2022).

13

in December.  The prior attempts to call the UC office are especially of no moment given that Claimant had navigated through the system since that time in preparing for the Referee hearing.  Because there is no testimony "evidenc[ing] that Claimant acted reasonably to learn the status of [her appeal] but was unsuccessful due to no fault of [her] own[,]" *Jenkins*, 202 A.3d at 145, or that she sought to access the Department's language assistance services, this Court is constrained to hold that Claimant failed to prove there was an administrative breakdown that led to her late appeal.[16]

        For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[16] This Court emphasizes the UCBR's guidance

> that [] [C]laimant was initially denied benefits under Section 401(d)(1) of the Law.  Disqualification under Section 401(d)(1) of the Law is a week-to-week test.  Therefore, [] [C]laimant may wish to check with the UC Service Center to determine what documentation is still needed to establish her eligibility to work in this country and qualify her for benefits going forward.

UCBR Dec. at 2-3; C.R. at 145-46.

Ram Basnet, :
                Petitioner :
                :
       v. :
                :
Unemployment Compensation :
Board of Review, : No. 1099 C.D. 2021
                Respondent :

## O R D E R

AND NOW, this 19th day of October, 2022, the Unemployment Compensation Board of Review's September 7, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge