IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Richardson Morris,   :
       Petitioner  :
           :
  v.        :
           :
Unemployment Compensation  :
Board of Review,    :  No. 399 C.D. 2024
     Respondent :  Submitted: February 4, 2025

BEFORE:  HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON      FILED: March 7, 2025

    Sandra Richardson Morris (Morris) petitions for review from the March 21, 2024, order of the Unemployment Compensation Board of Review (Board). The Board dismissed as untimely Morris's appeal to the Board from the February 3, 2023, determination of the referee that she was ineligible for unemployment compensation (UC) benefits because she voluntarily separated from her employment with Serving Spirit Home Care LLC (Employer). Upon review, we affirm.

## I. Factual and Procedural Background

    On October 31, 2022, Morris filed a claim for UC benefits. She had worked for Employer as a certified nursing aide (CNA) for $18.50 per hour. Certified Record (C.R.) at 3 & 19.[1] She reported that her beginning and ending

---

[1] Certified Record references reflect electronic pagination.

(only) day of work for Employer was August 2, 2022. *Id*. at 15. She asserted that she was "terminated-fired-suspended" from work for "unknown reasons." *Id*. at 3 & 19. In another part of the application, when asked about the conditions of her discharge from employment, Morris described what was later determined (at the first hearing in this matter) to be her separation from a prior employer, Pediatric Specialty Care (PSC), where she worked from August 2020 through July 27, 2022, shortly before the one day she worked for Employer. *Id*. at 22. As to PSC, Morris asserted in her application that she worked there full time and left that position due to medical leave requested by her doctor. *Id*.

In a December 8, 2022, determination, the UC Service Center denied Morris's claim because her separation from Employer was for "personal or other reasons" and not for a "necessitous and compelling cause" pursuant to the eligibility qualifications in Section 402(b) of the UC Law,[2] 43 P.S. § 802(b). C.R. at 26. On December 18, 2022, Morris timely appealed to have the matter heard by a referee. *Id*. at 37. An in-person hearing was held on February 2, 2023. *Id*. at 72.

The hearing proceeded without Employer, which had not responded or attended; Morris participated *pro se*. C.R. at 73. Morris testified that Employer is a home healthcare agency. *Id*. at 77. She signed up to work on an as-needed basis; Employer would offer jobs when they were available. *Id*. The day she worked for Employer, they had offered her a 12-hour shift with a heavy male patient. *Id*. at 78. She had to feed him, help him shower, and change the bed linens. *Id*. After that day, she realized that she was "still going through mental breakdown" from her previous full-time job with PSC and as a victim of a gunpoint robbery and carjacking in early December 2021; she had tried with Employer to see if she could work but

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

realized that she needed to take care of herself mentally. *Id*. at 78-80. She told Employer that the patient she had been assigned was too heavy and difficult for her to manage and that she could not take any more assignments. *Id*. at 79. Employer did not ask for more information, and she did not tell them about her mental struggles. *Id*. at 79-80. She was paid for that day's work. *Id*. at 80. At the time, she was treating for depression and anxiety due to the December 2021 carjacking. *Id*.

Morris stated that she did not formally resign from working for Employer but did not ask for more assignments and would have declined if Employer offered them to her. C.R. at 81. She had previously submitted to the referee her doctor's Family and Medical Leave Act (FMLA)[3] paperwork for medical leave from her position at PSC, but because the documentation was not specifically for Employer, she agreed with the referee that it would not be formally admitted to the record in this case; she apparently returned to PSC after working for Employer, but also has another pending UC matter concerning PSC.[4] *Id*. at 76 & 81-89.

On February 3, 2023, the referee issued a decision finding as fact that Morris worked for Employer for one day on August 2, 2022, as a CNA earning $18.50 per hour; that at the end of her shift on that day, she informed Employer that she was not available; she did not request a new assignment or provide any additional reasons why she could not continue working for Employer; and that she "voluntarily resigned from her employment with the Employer for unknown reasons." C.R. at

---

[3] Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-54.

[4] Consistent with Morris's testimony, the FMLA documentation, which was completed in September 2022 after her day working for Employer, indicated that she was being treated for depression and anxiety after being carjacked in early December 2021 and asked for FMLA time off between September 8, 2022, and November 30, 2022. C.R. at 88.

97. The referee concluded that Morris "failed to establish that she had no other alternative but to quit the employment or that she made a reasonable effort to preserve her employment with the Employer." *Id*. Accordingly, the referee affirmed the UC Service Center's initial determination of ineligibility. *Id*. at 99.

The referee's decision stated in bold type on the top right corner of the first page that the last date to appeal to the Board was February 24, 2023. C.R. at 96. The fifth page of the decision document also stated in capital letters and red type that the last day to appeal was February 24, 2023. *Id*. at 100. Morris filed a counseled appeal to the Board on March 10, 2023. *Id*. at 106-11. On May 10, 2023, the Board remanded for a hearing on the timeliness of Morris's appeal. *Id*. at 125-26. That hearing was held in person on June 15, 2023, before the same referee who issued the February 2023 decision. *Id*. at 131 & 148. Morris participated with counsel. *Id*. at 148. The referee advised that she would be acting solely as a hearing officer and would not be issuing a decision; the record would go straight to the Board for determination regarding the timeliness of Morris's appeal. *Id*. at 149-50 & 153. Employer did not participate. *Id*. at 150.

Morris testified that she received the referee's February 3, 2023, decision on that same date via email. C.R. at 153. She read it on her phone and did not see the appeal deadline in the upper right corner of the first page; she only noticed that the decision indicated it was final and that her appeal from the UC Service Center had been denied. *Id*. at 153-54. She stated that at the time, she was "very confused and my mind was all over the place. I'll be honest, I wasn't thinking clearly." *Id*. During February 2023, her father's health declined; she was visiting him every day at the hospital and was also helping her mother with health issues. *Id*. at 155. She "had a lot going on" and was "preoccupied with that." *Id*. When she

4

saw that the referee had denied her appeal, she "felt so defeated. I put [the decision] down and out of sight. I was so emotionally drained with my family issues, I couldn't take any more bad news." *Id*. at 156.

Morris stated that after she thought about it, she read the decision again and realized that she could appeal it. C.R. at 156. She also realized that the deadline had passed, but she felt the decision was wrong and unfair; she "wasn't giving up" so she called the Board on March 1, 2023. *Id*. A representative told her that "there was nothing I could do because the decision was final." *Id* at 154 & 156. She thought about it more, called the Board again on March 9, 2023, and was told that she could try to appeal even though it would be late. *Id*. After that, she "ran to Staples and appealed it via fax" the same day; the fax confirmation is of record. *Id*. at 156 & 158. The next day, she retained current counsel because she felt defeated and confused by apparently being told different things by Board representatives. *Id*. at 157.

Morris subsequently filed a counseled brief with the Board. *Id*. at 172. The brief did not address the timeliness of her appeal. *See id*. at 172-75. On the merits, she asserted that the mental issues she was going through when she worked for Employer on August 2, 2022, specifically the depression and anxiety from the December 2021 carjacking/robbery and her issues with her other job at PSC, caused her to stop working for Employer. C.R. at 174-75. In addition to needing her own care, if she continued working for Employer, it could have placed Employer's home health clients in danger and jeopardized her professional integrity. *Id*. She averred that telling Employer her personal and medical reasons for leaving the job would have been futile because there could not be any feasible accommodations made in the home health care context that would allow her to keep working for Employer.

5

*Id*.  Because she had no choice but to stop working for Employer, she had a "necessary and compelling cause" to leave her job as set forth in Section 402(b) of the UC Law and should be found eligible for benefits.  *Id*.

On March 21, 2024, the Board issued its decision and order.  C.R. at 177-78.  The Board found as fact that Morris received and read the referee's February 3, 2023, decision on that date via email, that the decision notified her that she had until February 24, 2023, to appeal, that she did not appeal until March 9, 2023, and that there was no record evidence that she was "misinformed or misled" by Board personnel regarding her "right or the necessity to appeal."  *Id*.  The Board acknowledged Morris's testimony about her mental and emotional state of mind during the appeal period but noted that she did not act until after the appeal period had ended and that she knew her appeal was late.  *Id*. at 178.  The Board concluded that Morris had not shown sufficient evidence of fraud, an administrative breakdown, or non-negligent conduct sufficient to excuse her late appeal.  *Id*.  As such, the Board did not address the merits and dismissed Morris's appeal.  *Id*.

Morris timely petitioned this Court *pro se* for further review, raising both the timeliness of her appeal from the referee's decision to the Board and the merits of her appeal.  Morris's Br. at 6.

## II. Discussion

In unemployment compensation cases, the Board is the ultimate factfinder.  *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008).  The Board's findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings.  *Id*.

6

Findings of fact made by the Board that are not specifically challenged are conclusive upon review.[5]  *Id.*

Section 502(a) of the UC Law states that a party has 21 days to appeal a referee's decision to the Board.  43 P.S. § 822(a); *see also* 34 Pa. Code § 101.82. If an appeal is untimely, the referee's decision becomes final and the Board lacks jurisdiction to consider the merits of the matter.  *Hessou*, 942 A.2d at 197-98.  In certain circumstances, however, the Board may grant *nunc pro tunc* relief and excuse an untimely appeal.  *Id.* at 198.  Given the mandatory and jurisdictional nature of the statutory time limit, the petitioner's burden is heavy and limited to three circumstances; the petitioner must show that the agency "engaged in fraudulent behavior," that an administrative breakdown occurred, or that "non-negligent conduct" beyond the petitioner's control caused the late filing.  *Id.*

The non-negligent conduct may be that of either the petitioner or a third party.  *Mountain Home Beagle Media v. Unemployment Comp. Bd. of Rev.*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008).  In this context, the petitioner must file the appeal as soon as possible after the deadline and the other side cannot be prejudiced by the delay.  *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996). The petitioner must show that "extraordinary circumstances" led to the untimeliness and that the request for relief is more than an appeal for "grace or mere indulgence" from the administrative tribunal or this Court.  *Russo v. Unemployment Comp. Bd. of Rev.*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010).

Mental disabilities or conditions may constitute non-negligent circumstances sufficient to warrant *nunc pro tunc* relief.  *Lewis v. Unemployment*

---

[5] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence.  *Hessou*, 942 A.2d at 197.

*Comp. Bd. of Rev.*, 814 A.2d 829, 831-32 (Pa. Cmwlth. 2003) (acknowledging potential validity of claimant's assertion that she did not understand appeal information due to multiple documented and significant learning and cognitive disabilities, including dyslexia). However, "personal circumstances" and "[t]he pressure of life events" are insufficient to excuse an untimely appeal where the petitioner fails to carefully read a determination that includes an appeal deadline. *Carney v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 1286, 1288 (Pa. Cmwlth. 2018) (rejecting claimant's testimony that he was distracted by starting a business and the birth of his child and failed to note the appeal deadline on the referee's determination). Even "negative" personal circumstances have been held insufficient to excuse an untimely appeal when the lateness was due to careless reading, negligence, or an error in judgment. *See Douglas v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 226 C.D. 2022, filed Nov. 17, 2022), 2022 WL 16984571 (unreported) (rejecting claimant's assertion that her personal difficulties during the appeal period, including health issues and domestic violence along with lack of a cell phone or internet access, caused her untimely appeal when she admitted she relied on incorrect advice from her son); *Figueroa v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 946 C.D. 2021, filed May 10, 2022), 2022 WL 1464519 (unreported) (rejecting claimant's assertion that she "wasn't paying attention to her mail" during appeal period because she was caring for and spending time with her hospitalized sister).[6]

Moreover, if a party asserts factual reasons on appeal to this Court that were not presented to the Board as factfinder and made part of the administrative record, this Court may not consider those reasons. *Hollingsworth v. Unemployment*

---

[6] We may cite unreported panel decisions as persuasive authority pursuant to Section 414(a) of our Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*Comp. Bd. of Rev.*, 189 A.3d 1109, 1113 (Pa. Cmwlth. 2018) (stating that "because mere allegations are no substitute for record evidence, this Court cannot consider the averments of fact in [a party's] brief when determining whether the Board erred in issuing its findings"); *see also Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1228 (Pa. Cmwlth. 2021) (stating that "this Court is bound by the record below, and we cannot accept allegations of fact that are not supported by record evidence").

Here, there is no dispute that Morris filed an untimely appeal from the referee's February 3, 2023, determination that she was ineligible for benefits. The appeal deadline was February 24, 2023, and Morris did not file her appeal until either March 9 or March 10, 2023. C.R. at 96 & 106-11. After considering the evidence from the hearing on timeliness, the Board, acting as factfinder, concluded that Morris had not shown "credible evidence" to meet any of the three instances that would excuse her late appeal. C.R. at 178. The Board found no evidence that fraud had occurred or that UC Service Center personnel misled or misinformed Morris about her appeal rights, particularly since she knew her appeal was late and did not call until after the deadline had already passed. *Id.* The Board also rejected Morris's assertion that her failure to notice and act on the appeal deadline due to her mental and emotional state amounted to non-negligent conduct sufficient to excuse her late appeal. *Id.*

Morris argues to this Court that she was "the victim of a traumatic carjacking incident shortly before her appeal deadline." Morris's Br. at 9-10. She adds that she filed her appeal with reasonable diligence "once she was able to manage the traumatic effects" of the carjacking. *Id.* at 11. On the merits, she asserts that the Board erred in finding that she "committed willful misconduct by resigning

9

from her position" with Employer and that Employer "constructively discharged" her by permitting mentally, physically, and emotionally hazardous working conditions that "compelled her to quit."[7] *Id*. at 12-13. She avers that the Board failed to provide meaningful analysis or a reasoned determination of its decision. *Id*. at 9.

Board Counsel responds that the Board expressly considered and addressed Morris's timeliness evidence and did not err in rejecting it. Board's Br. at 7-8. Board Counsel notes that at the June 2023 remand hearing, Morris testified that her parents' health issues were the cause of her distraction and failure to heed the appeal deadline; at that proceeding, she did not mention a recent carjacking as the reason for her late appeal in February 2023 (the carjacking Morris testified to as part of her inability to work in August 2022 had occurred in December 2021). *Id*. at 8-9. Board Counsel acknowledges that Morris's family issues were "distressing," but maintains that they were "not legally sufficient to justify a late appeal." *Id*. at 10. Board Counsel avers that the only issue before this Court is the timeliness of Morris's appeal to the Board and due to its untimeliness, neither the Board nor this Court has jurisdiction to consider the merits. *Id*. at 13-14.

In a reply brief, Morris reiterates that the carjacking she sustained was the direct reason for her ensuing mental and emotional health issues that "prevented her from properly processing" the referee's decision and then also caused her "inability to file a timely appeal." Morris's Reply Br. at 2-3.

We agree with the Board on this point. At the first hearing in early February 2023, Morris testified that a carjacking occurred in early December 2021 and that the ongoing trauma from that event was part of the cause of her inability to continue working for Employer in August 2022. C.R. at 78-80. At the subsequent

---

[7] Nothing in the record or previous adjudications in this case pertains to either willful misconduct or constructive discharge.

June 2023 hearing on the timeliness of her appeal, where she was represented by counsel, she stated that issues with her parents' health were the cause of her failure to notice the appeal deadline. *Id*. at 153-56. At that proceeding, she did not refer to the December 2021 carjacking or state that another more recent carjacking had occurred that caused her late appeal. *See id*.

We also note that in December 2022, a year after the December 2021 carjacking, Morris timely appealed the UC Service Center's initial denial of benefits to a referee. This indicates that prior to her late appeal to the Board, the carjacking had not affected her ability to discern and heed the deadline printed on the Service Center's denial letter, which was presented in the same manner as the deadline printed on the subsequent referee's decision. Because Morris did not attribute her lateness in appealing to the Board to a carjacking when evidence was taken specifically for the Board to assess the untimeliness, the Board could not consider it, and neither can this Court. *See Hollingsworth*, 189 A.3d at 1113; *see also Harris*, 247 A.3d at 1228. Accordingly, our evaluation of this appeal of the Board's determination that Morris's appeal to the Board was late is limited to the evidence she presented at the June 2023 timeliness hearing, specifically that her parents' health issues and her need to spend time helping them impacted her mental ability to discern the deadline on the referee's denial decision. C.R. at 153-56.

There is no allegation or evidence of fraud on the part of UC personnel in this matter. Regarding a potential administrative breakdown, Morris testified that when she called the Board on March 1, 2023, she was told that the referee's decision had become final and there was nothing she could do. *Id*. at 156. When she called again, she was told that she could try to appeal even though the deadline had passed. *Id*. Although Morris may have received mixed messages from those calls to the

11

Board, both were made after the deadline had passed and Morris testified that she knew her appeal was late when she made those calls. *Id*. As such, any misinformation she may have received did not cause her appeal to be late but went to her subsequent diligence in curing her late appeal, which is not at issue here. The Board correctly concluded that the content of those calls did not constitute an administrative breakdown based on misinformation by UC personnel. *Id*. at 178.

Regarding alleged non-negligent conduct, Morris testified at the timeliness hearing that her parents' health issues and her need to spend time helping them led to her preoccupation and confusion when she received the referee's decision, such that she did not notice the appeal deadline. C.R. at 153-56. The Board did not find as fact that this was the case and in the Board's discussion, it did not recount the entirety of Morris's testimony. *Id*. at 178. However, the Board noted Morris's assertions that "when she saw the [referee's] denial, she just put it down because she could not take any more bad news and was emotionally upset." *Id*. The Board concluded that Morris's evidence did not rise to the level of non-negligent conduct beyond her control that would excuse her late filing.[8] *Id*.

We agree. In *Lewis*, this Court acknowledged that the claimant's multiple and significant learning and cognitive disabilities, including dyslexia, could potentially be the basis for a finding of non-negligent conduct that would excuse a late appeal, and we remanded for a factual determination on that issue. 814 A.2d at 831-32. Here, however, Morris did not assert similar disabling circumstances as the basis for her untimeliness. Instead, this case is analogous to *Carney*, *Douglas*, and

---

[8] Contrary to Morris's assertions, the Board's decision provided sufficient analysis and reasoning for this Court to conduct appellate review. In administrative matters, an adjudicative board must make crucial findings on the essential issues but "is not required to address specifically each bit of evidence offered." *Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993).

12

*Figueroa*, where the claimants asserted that various "personal circumstances" and "the pressure of life events" led to their overlooking their appeal deadlines. In those cases, and others collected in *Carney*, this Court has consistently held that such circumstances are insufficient to excuse a late appeal. *See Carney*, 181 A.3d 1286, 1288 (listing five cases where this Court declined to find non-negligent conduct in claimants' assertions of computer difficulties, caring for ill relatives, dealing with a family member's death, financial stress, other legal issues, and the lingering effects of a medical condition).

Here, similarly, Morris's personal issues at the relevant time, specifically her parents' health issues, were unfortunate, but our case law establishes that her failure to read the referee's decision carefully enough to notice the appeal deadline is not a non-negligent circumstance warranting *nunc pro tunc* relief. As such, the Board did not err in concluding that Morris had not met her burden to excuse her late appeal and dismissing her appeal on the basis of untimeliness without reaching the merits.

## III. Conclusion

In light of the foregoing, the Board's March 21, 2024, order dismissing Morris's appeal as untimely is affirmed and we do not reach the merits of her claims.

_____
CHRISTINE FIZZANO CANNON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Richardson Morris,     :
                  Petitioner    :
    :
          v.                 :
    :
Unemployment Compensation     :
Board of Review,             :    No. 399 C.D. 2024
          Respondent   :

# **O R D E R**

AND NOW, this 7th day of March, 2025, the March 21, 2024, order of the Unemployment Compensation Board of Review, which dismissed as untimely the appeal of Sandra Richardson Morris from the referee's February 3, 2023, order finding her ineligible for unemployment compensation benefits, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge